## MARSHALL *v.* STATE.

### Opinion delivered November 27, 1911.

1. CRIMINAL LAW—MOTION IN ARREST OF JUDGMENT.—Under Kirby's Digest, section 2427, the only ground upon which a judgment of conviction in a criminal case should be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court. (Page 155.)

2. WITNESSES—PUTTING UNDER THE RULE.—The object and purpose of putting witnesses under the rule is not to prevent them from exercising an undue influence in the trial, but to prevent falsehood. (Page 155.)

3. SAME—EXCLUSION FROM COURT ROOM.—The matter of excluding the witnesses from the court room while they are not under examination is within the sound discretion of the court, and will not be reviewed where no abuse of discretion is shown. (Page 156.)

Appeal from Lafayette Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*D. L. King,* for appellant.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

HART, J. William Marshall was indicted and convicted of the crime of burglary, and has appealed from the judgment rendered.

Counsel for the defendant calls our attention to an alleged defect in the indictment, and urges a reversal on this account. No demurrer to the indictment was filed. A motion in arrest of judgment was made, but our statute provides that the only ground upon which the judgment should be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court. Kirby's Digest, § 2427; *Ince* v. *State,* 77 Ark. 426.

Tested by this rule, the indictment upon which the defendant was tried was not void. At most, the indictment could only be considered as defective, and we do not even decide this question. It is sufficient to say that the motion in arrest of judgment was not well taken.

It is next contended by counsel for the defendant that the court erred in permitting R. L. Bradshaw to remain in the court room after he had testified. Bradshaw is the person whose store is alleged to have been burglarized, and he was the

foreman of the grand jury which indicted the defendant. When the case was called for trial, the witnesses were put under the rule. Bradshaw was put on the stand first by the State, and, after he had finished testifying, he was excused from the rule and permitted to take his seat by the prosecuting attorney during the remainder of the trial. It is contended by counsel for the defendant that Bradshaw was a prominent man in the community, well and favorably known to all the jurors, and that on this account, and for the reason that he was foreman of the grand jury which indicted the defendant, his presence in the court room during the trial had an undue influence on the jury. This objection is not well taken. The object and purpose of putting witnesses under the rule is not to prevent them from exercising an undue influence on the jury by their presence in the court room during the trial, but it is to elicit the truth from the witnesses and to prevent falsehood. The matter of excluding the witnesses from the court room while they are not under examination is not one of right, but is within the sound discretion of the court. It is true that Bradshaw was again called to the stand, and testified in rebuttal for the State, but his testimony then was on immaterial matters, and from an examination of it we can not see that the defendant was prejudiced by the action of the court in allowing Bradshaw to remain in the court room after he had first testified.

The most serious question in the case, and that which has given us the gravest concern, is whether or not the verdict of the jury is warranted by the evidence. The undisputed evidence in the case, briefly stated, is as follows:

On Sunday morning, the 11th day of August, 1911, John McLendon went to the storehouse of R. L. Bradshaw at Spirit Lake in Lafayette County. He lived about a quarter of a mile from the store. He arrived at the store at about 7 o'clock that morning, and discovered that the store had been broken open. The panel had been broken out of the front door, and the back door had been left open by the parties who had entered the store. McLendon discovered that two or three silver watches had been taken from the drawer, which were worth five dollars apiece. He also found a couple of shoe boxes from which the shoes had been taken; one pair of shoes was worth four dollars, the other five dollars.

The goods were torn up pretty badly, and there were indications that they had also taken some hats and some hose. Some groceries were also taken. It appears that the parties who had entered the store lit matches in order to see, and the paper was burned off of some of the boxes. Some clothing also was missed. Bradshaw and McLendon found in the store some old clothes and an old pair of shoes.

The old clothes were identified by the witnesses for the State as being the property of the defendant, Marshall. The old pair of shoes was also identified by one of the witnesses for the State as being the shoes of the defendant, and as having been worn by him on the night of the burglary. The shoes were in the court room, and the witnesses for the State identified them as being the pair worn by the defendant at a party on the night the burglary is alleged to have been committed.

The defendant took the stand in his own behalf, and denied having participated in the burglary. He admitted that the old clothes exhibited to the jury as having been found in the store belonged to him, and said that on the preceding day he had loaned them to another negro, who was wearing them on the night the burglary is alleged to have been committed. The defendant admitted that he went to the party with George Sanders, the negro who was wearing his clothes on the night of the alleged burglary, but denied that after he left the party he went to the storehouse of Bradshaw and helped to burglarize it. He also denied that the shoes found in the store the morning after the alleged burglary belonged to him, or that he had ever worn them. Other evidence was introduced by him tending strongly to corroborate his statements.

It is first insisted by counsel for the defendant that there is no evidence tending to show that the store was broken into in the night time. We can not agree with counsel in this contention. McLendon testified that he did not see the defendant at the store on Saturday. From this the jury might have inferred that McLendon was there on Saturday performing his duties as clerk. We also quote as follows from his testimony:

"Q. Where do you live? A. I live at Mr. Bradshaw's on Spirit Lake. Q. Do you work in his store there? A. Yes, sir. Q. Do you remember the occasion when it is said

the store was broken open? A. Yes, sir. Q. When was that? A. On Saturday night. Q. Who first discovered it? A. I did. Q. About what time next morning did you discover that the store had been broken open. A. About 7 o'clock, I reckon."

He also testified that the parties who entered the store had lit matches in order to see, and that he had heard pistol shots in the direction of the store. He also stated that one of the pistol balls had entered the store from the rear. From this and other evidence in the case, the jury might well have inferred that the store was broken into in the night time, and on the Saturday night in question.

The evidence tending to connect the defendant with the burglary is not so strong, and it may be said that it is weak, but we think it is sufficient to warrant the jury in convicting the defendant. The defendant testifies that the clothes found in the store on the morning after the burglary belonged to him, but that they had been worn by another negro, George Sanders, on the night of the burglary. In this he is corroborated by a number of other witnesses who saw him at the party. He denies that he owned the shoes found in the store, or that he ever wore them. In this he is corroborated by other witnesses, but in this respect he is contradicted by another negro named Dallas Smith. Dallas was at the party, and, upon being asked if he noticed the shoes the defendant had on that night, answered, "Yes." He was then asked what kind of shoes they were. He pointed to the shoes lying on the floor which had been found in the store the morning after the burglary, and said, "There they is." He was then asked if he was sure they were the shoes, and answered: "Yes, sir." On cross examination, he gave, as one of his reasons for knowing the shoes, that they were not mates.

The jury are the sole judges of the credibility of the witnesses; and the testimoney of Dallas Smith, when taken in connection with the fact that the defendant and George Sanders went to the party together and left it together at a late hour on the night the store was broken into, and the further fact that the clothes found in the store had been worn by George Sanders on that night, warranted the jury in finding that the defendant was present and participated in the burglary.

The judgment will be affirmed.