HARRIS *v.* STATE.

Opinion delivered July 5, 1926.

1. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE.—In a prosecution for manufacturing and being interested in the manufacture of intoxicating liquors, evidence *held* to sustain conviction.

2. WITNESSES—EXCLUSION OF IMPEACHING TESTIMONY.—Where, in a prosecution for manufacturing intoxicating liquor, a State's witness testified to having seen accused at a still at a certain time, and a witness for accused testified to having seen the State's witness at another place at the time in question, exclusion of the testimony of two witnesses corroborating accused's witness was reversible error.

3. CRIMINAL LAW—PUTTING WITNESS UNDER THE RULE.—Whether any or all of the witnesses shall be put under the rule is within the trial court's discretion, under Crawford & Moses' Dig., § 4191.

4. CRIMINAL LAW—PUTTING WITNESSES UNDER RULE.—A wider discretion is allowed the trial court in relaxing the rule when it has been ordered than in excluding testimony when the rule has been violated.

5. CRIMINAL LAW—PUTTING WITNESSES UNDER THE RULE.—Where counsel for accused did not know until a few minutes before offering testimony that witnesses would testify to certain facts, and for that reason they had not been called as witnesses and put under the rule, refusal to permit them to testify was an abuse of discretion, where they were offered before the close of the testimony.

6. CRIMINAL LAW—PUTTING WITNESSES UNDER THE RULE.—The court, after placing the witnesses under the rule, may enforce its order by directing the witnesses to retire, may compel retirement by ejection, or fine for contempt any witness evading or disobeying the order.

7. CRIMINAL LAW—COMMENT OF COUNSEL ON CONDUCT OF WITNESS.—Counsel of opposing side may comment on the failure of a witness to obey the rule as affecting his credibility.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; reversed.

*Toney & Smith,* for appellant.

*H. W. Applegate,* Attorney General, and *J. S. Abercrombie,* Assistant, for appellee.

SMITH, J. Appellant was tried under an indictment charging him with manufacturing and being interested in the manufacture of intoxicating liquors; was convicted, and has appealed.

A still had been located, and officers were watching it to learn who were operating it. Officers Vick and McBurnett, accompanied by two citizens, crept up to the still and saw two men operating it. Vick testified that he identified both men, one being appellant, Arthur Harris, the other a man named Bob Sykes. The posse had surrounded the still, and ordered the men found operating it to throw up their hands, but, instead of submitting to arrest, they ran away. A copper still with a charcoal burner was found, and four or five barrels of mash, and about five gallons of whiskey had been run.

Without setting out the testimony of the officers further, it may be said that their testimony showed very conclusively that two men were found making whiskey, and the principal question of fact in the case is the identity of these men. Vick was positive in his identification of both appellant and Sykes, and the testimony of the other members of the posse is more or less corroborative of the testimony of Vick. There is therefore no question about the legal sufficiency of the evidence to sustain the verdict of the jury finding appellant guilty as charged. It appears, however, that Sykes had been previously tried and acquitted, and appellant denied that he was seen at the still. He also denied that he knew anything about the still or that he had ever seen it. The still was found about three-quarters of a mile from appellant's home.

A witness named Stone testified that, prior to the time the still was raided by the officers, he had lost a hog, and was looking for it in the woods, when he came upon the still, which was in full operation, and that he recog-

nized appellant as one of the men operating it. Stone found between twenty and thirty gallons of whiskey in kegs and bottles and about seven or eight barrels of mash. He testified that the men in charge of the still ran away, after which witness got in his car and went to a schoolhouse, and from there he went to Pine Bluff, where he told the officers what he had seen.

Appellant offered testimony to the effect that, on the day the officers raided the still, he was at home working in his field.

A boy named Troy Tucker testified that he knew the afternoon when the witness Stone claimed to have been in the woods and to have seen appellant at the still, and that Stone came to the school in the afternoon before the school was dismissed for the day. This witness had not been subpoenaed in the case, and was in attendance on the trial just to hear it, as he knew the parties. As soon as the witness Tucker had thus testified the following proceedings were had: "Mr. Toney: Call Miss Jacks. If the court please, I find out there are two girls that were going to that school—(interrupted). Mr. Brockman: They have been in the courtroom all day. The Court: They have been here all day. You may let the record show, Mr. May, that the defendant offered to use these witnesses and the court denies them the right to testify; save his exceptions. Mr. Toney: I would like to state to the court what—(interrupted). The Court: Don't state that in the presence of the jury. Preserve your record outside. I will give you a chance to do that later on."

The trial proceeded, and another witness testified in support of appellant's defense, after which it is recited that the following proceedings were had: "The following proceeding was had in the court's private chamber, out of the presence and hearing of the jury: The Court: Let the record show that the witness, Miss Helen Jacks, that the defendant offered to prove by Miss Helen Jacks and Miss Gladys Hunt that they were going to the school in question; that on Thursday they saw the witness Stone at the schoolhouse, Thursday afternoon at three o'clock,

the same afternoon that it is claimed that he (Stone) saw these boys in the woods. That these witnesses were not sworn along with the others, and were not put under the rule, and had been sitting in the courtroom and were not summoned as witnesses in the case; that they had been sitting in the courtroom listening to all the testimony up until that time, and that the court refused to permit them to testify, to which action of the court the defendant at the time objected, and asked to save his exceptions. Counsel for defendant did not know until a few minutes before he offered these girls as witnesses that they went to this said school in question. Let the record show further that, at the time of offering these parties as witnesses, counsel did not state to the court that they had just found out that they were in possession of this information. Mr. Toney: I want to offer our instruction number 'A,' and ask that the court give it to the jury along with the other instructions. The Court: It is refused. Mr. Toney: Note our exceptions, and, your Honor, since you refuse this instruction, we ask to be allowed to introduce additional testimony. The Court: That request will be granted. You may do that. This concludes the proceedings had in chambers out of hearing of the jury.''

Thereafter Bob Sykes testified as a witness in appellant's behalf, as did also Claud Pledger, and officer McBurnett, who had previously testified, was recalled for further examination.

After the conclusion of this testimony the court proceeded to instruct the jury, and, while exceptions were saved to the instructions given, no error is pointed out in them, and we find none.

Appellant asked only one instruction, it being to the effect that testimony tending to show that appellant had been seen operating a still in July, 1925, could be considered by the jury only as ''a circumstance tending to show that appellant was in the whiskey business.'' The indictment under which appellant was convicted charged that on the 4th day of December, 1925, he manufactured and was interested in the manufacture of intoxicating liquors.

The instruction requested by appellant was properly refused. The date referred to in the instruction was within three years of the date of the return of the indictment, and the venue was the same. In other words, the testimony was to the effect that appellant had been seen on two different occasions operating the same still, and the State had the right, as it evidently elected to do, to use testimony which would have shown two separate offenses to secure a single conviction. The testimony concerning the prior offense was admissible therefore to show that appellant was guilty of the offense charged, as a conviction could have been had if it were shown that, at any time within three years of the date of the indictment, appellant had manufactured or been interested in the manufacture of intoxicating liquors. It is true the jury might have believed that the officers who raided the still were mistaken in their identification of appellant as one of the men seen at the still, and would, no doubt, have done so had they believed the testimony tending to prove an alibi for appellant, and may, in fact, have found him guilty of making liquor on the prior occasion, but the jury had the right to do this if they found appellant had made liquor on either occasion, both occasions being within three years of the date of the indictment. *Turner* v. *State,* 130 Ark. 48, 196 S. W. 477.

We are of the opinion, however, that the court was in error in excluding the testimony of the two young ladies. Their testimony would have contradicted that of the witness Stone, and it may be that the conviction was based upon the testimony of Stone, and not upon that of the officers who raided the still. As we have shown, it could have been, and for this reason no error was committed in refusing to give the only instruction which appellant requested. The witness Tucker was a pupil at the school, and testified that Stone came to the school before it was out. This testimony tended to contradict that of Stone, and the testimony of the two young ladies who were also pupils at the school would have been corroborative of that of young Tucker. The testimony was

therefore relevant and material, and might have been of great value to appellant. The testimony of the young ladies was not excluded because it was irrelevant and immaterial, but because the rule had been ordered on the witnesses, and the young ladies had not been called and sworn and placed under the rule along with the other witnesses in the case.

Counsel for appellant stated, when he offered to call the girls as witnesses, that he did not know, until a few minutes before he offered the girls as witnesses, that they were in attendance upon the school in question. The court did not hear any testimony as to when this information was first acquired by counsel, and the statement of counsel therefore stands unchallenged. When these witnesses were first called, counsel for appellant undertook to make a statement to the court, but was interrupted by the court and told that a chance to do so would be given later. The court, in excluding this testimony, had the record to show "that at the time of offering these parties as witnesses counsel did not state to the court that they had just found out that they were in possession of this information." But, as has been shown, the court had interrupted counsel with the statement that a chance would be given later. Moreover, it appears that, when this chance was later given, it was not then too late to permit these witnesses to testify. The case had not then been closed. In fact, as we have already shown, other witnesses were thereafter called and permitted to testify.

By § 4191, C. & M. Digest, it is provided that "if either party require it, the judge may exclude from the court room any witness of the adverse party not at the time under examination, so that he may not hear the testimony of the other witnesses."

It has been held that whether any or all the witnesses shall be put under this rule is a matter within the discretion of the court. *Oakes* v. *State*, 135 Ark. 221, 205 S. W. 305; *Marshall* v. *State*, 101 Ark. 155, 141 S. W. 755; *St. Louis, I. M. & S. Ry. Co.* v. *Pate*, 90 Ark. 135, 118 S. W. 260.

Notwithstanding the discretion which it has been held that the court has in the enforcement and the relaxation of the rule, this discretion is not beyond review, and we think an abuse of discretion was shown in excluding the testimony of the young ladies.

The court may order the rule, and may enforce it by ordering the witnesses to retire, and may compel their retirement by ejecting them from the court room, if it should be necessary so to do, or may fine for contempt any witness who had returned or had otherwise evaded or disobeyed the order of the court. It would also be permissible for counsel against whose side the witness had testified to comment upon the failure of the witness to obey the rule as a circumstance affecting his credibility.

In the case of *Pleasant* v. *State,* 15 Ark. 650, a witness for the State named Landers had, along with the other witnesses in the case, been put under the rule and admonished not to talk with the other witnesses in the case. Landers was seen conversing with Fulmer, the husband of the prosecuting witness, who was alleged to have been raped, after this prosecuting witness had testified. After stating that there was a presumption—the contrary not appearing from the bill of exceptions—that the court had ascertained that no conversation had occurred between the witness and the husband of the prosecutrix prejudicial to the prisoner, the court said: "But, if this were not so—even if Landers had remained in, or returned to, the courthouse, after he was put under the rule, and heard Mrs. Fulmer testify, this would not have been absolute cause to exclude him, but the court had the discretion to permit him to be examined, and his conduct would have gone to his credit. The power of the court to exclude a witness for disobedience of the rule is rarely exercised in this country, but the witness is punishable with contempt."

In the case of *Golden* v. *State,* 19 Ark. 590, a witness gave testimony which the attorney for the defendant stated to the court was a surprise, whereupon he asked that a witness who had not been sworn nor put under the

rule be sworn as a witness. Counsel stated that this witness had not heard the testimony of the State's witnesses, but the trial court refused to permit the defendant's witness to be sworn. This was held to be error, and in so holding the court said: "The course formerly was to exclude witnesses who might disobey the rule and return into the court after they had been ordered out. But the practice in the American courts seems to be different. In this country the right of excluding witnesses for disobedience, though well established, is rarely exercised. The practice here is to punish the witness for contempt in case of disobedience."

In the case of *Hellems* v. *State,* 22 Ark. 207, the witnesses had been put under the rule, and, after both the State and the defendant had closed, the court permitted the State to introduce rebutting witnesses who had not been put under the rule, and an exception was saved to this ruling. It was not shown whether these witnesses had heard the testimony of the other witnesses or not, but the court said: "If they had, the court had the discretion to admit them, and this went to their credibility, and not to their competency."

In 14 Encyclopedia of Evidence, chapter "Witnesses," page 598, it is said: "The better rule seems to be that a witness is not disqualified from testifying by reason only of his having disobeyed an order of exclusion, that his testimony ought not to be rejected and the party who called him deprived of his testimony where such party is himself without fault; but that such violation should only affect the witness' credibility, or subject him to punishment for contempt."

In the case of *Smith* v. *State,* 4 Lea (Tenn.) 428, the syllabus reads as follows: "In a criminal case involving the life of the prisoner, a witness whose testimony has only been discovered a few moments before he is put on the stand, ought not to be excluded merely upon the ground that the defendant had joined the State in requiring that the witnesses be put under rule, where the testimony of the witness is material to the defense."

In the case of *Davis* v. *Byrd,* 94 Ind. 525, it is said:
"We hold the true rule to be this: Where a party is
without fault, and a witness disobeys an order directing
a separation of witnesses, the party shall not be denied
the right of having the witness testify, but the conduct of
the witness may go to the jury upon the question of his
credibility. The modern authorities are overwhelmingly
in favor of this doctrine. Mr. Bishop says: 'On the other
hand, if the party was without fault, the judge had no
right to punish his innocence by depriving him of his
evidence, and ruin him at the will of a witness. The tes-
timony should be admitted, subject to observation to the
jury. Such is the law in principle. * * * Other judges,
less mindful of these reasons, appear to deem it within
their discretion in all cases of disobedience to the order
to reject the witness.' 1 Bishop Crim. Proc., §§ 1191, 1192.
An English author gives this statement of the rule: 'But
it seems to be now settled, that the judge has no right to
reject the witness on this ground, however much his will-
ful disobedience of the order may lessen the value of his
evidence.' 2 Taylor, Ev. 1210. The same doctrine is
found in 2 Phillips, Ev. (5th Am. ed.) 744." Among the
numerous cases cited by the court as sustaining the rule
announced is our own case of *Pleasant* v. *State, supra.*

In the case of *Hubbard* v. *Hubbard,* 7 Ore. 42, a syl-
labus reads as follows: "It is error to reject the testi-
mony of a witness on the ground that he was present
in the court room, in violation of an order of the court
excluding the witnesses during the trial, unless it appears
that the party calling him was in complicity with him. The
witness, however, may be punished for contempt for vio-
lation of such order."

A wider discretion is allowed the trial court in relax-
ing the rule, when it has been ordered, than is possessed
in excluding testimony when the rule has been violated.
This is recognized in the opinion of the Supreme Court
of the United States in the case of *Holder* v. *U. S.,* 150 U.
S. 91. That case was appealed from the Circuit Court of
the United States for the Western District of Arkansas.

There the witnesses had been placed under the rule, and an uncle of the man the defendant was charged with having murdered had violated it. When this witness was called, it was then objected that he had heard the testimony of the other witnesses, in disregard of the direction of the court in that behalf, and the objection was overruled and the witness was allowed to testify. Speaking through Chief Justice Fuller, the court said: "If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court." After citing numerous cases the court proceeded to say: "Clearly, the action of the court in admitting the testimony will not ordinarily be open to revision."

Here the statement of counsel that he had just come into possession of the information as to the young ladies who had not been called and sworn and put under the rule was unchallenged. This information was communicated to the court before the taking of the testimony was concluded. Appellant must have known that the officers would testify concerning what they saw and found when they raided the still, for Sykes had been previously tried upon that charge and acquitted, and, if it be said that the defendant should have been prepared to meet any issue relating to this occasion, and should have had the witnesses supporting his defense against that charge present and under the rule, it may be answered that the witness Stone testified to another and different violation of the law—an act permissible to be shown—yet one which might have occasioned surprise.

We conclude therefore that the court should have permitted the young ladies to be called as witnesses, and, for the error in refusing to permit this to be done, the judgment of the court below will be reversed, and the cause remanded for a new trial.