BILL WADE *v.* CLEO MOODY, COUNTY JUDGE ET AL

5-6228                                               500 S.W. 2d 593

Opinion delivered October 15, 1973
[Rehearing denied November 19, 1973.]

*Bob Scott* and *Robert D. Smith III,* for appellant.

*Jim Guy Tucker,* Atty. Gen. by: *Lonnie A. Powers,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. A complaint was filed in the Lawrence County Chancery Court by Cleo Moody, County Judge, and David Hodges, Prosecuting Attorney, who are the appellees. By their complaint they sought to enjoin the appellant, Bill Wade, from interfering with the use of a road by the public. Appellant was so enjoined and hence this appeal. The issues joined on appeal concern (1) whether the court should have dismissed the complaint, (2) whether it was proper for the trial court to strike the testimony of one of the witnesses, (3) whether it was proved that the road was used by the public adversely to the rights of the landowner, and (4) whether the public had abandoned the use of the road.

The road in dispute was designated by the witnesses as Ridge Route Road. It runs roughly north and south

and is said to be approximately three and one-half miles long. It is not a part of the county road system. It connects on each end with east and west roads which are a part of the county road system. A substantial portion of the road traverses lands owned by appellant. The record in this case consists of approximately 1000 pages of testimony introduced by 52 witnesses, and a multitude of maps and pictures. The abstract of the testimony consists of 119 pages. A recount in this opinion of the substance of all testimony of all witnesses will not be made for obvious reasons. We shall later refer to some of the evidence as we resolve those points wherein the evidence is relevant.

Appellant first contends that his motion to dismiss the case should have been granted because it was not brought in the name of the State of Arkansas. He refers us to Ark. Stat. Ann. § 17-302 (Repl. 1968). It is there provided that actions by counties may be brought in the name of the state for the use of the county. The motion was oral and out of time. It was made on the morning of the trial and, of course, after the case had been set for trial. See Rule 2, Uniform Rules for Circuit and Chancery Courts, March 1, 1969. Furthermore, the court's refusal to consider the oral and untimely motion suggests no prejudice to appellant; in fact the motion went to a matter of form rather than substance.

Appellant next contends the court erred in striking the testimony of Donna Lee Bacon. The case was tried intermittently over a period of months. The rule on the witnesses was invoked at the beginning of the trial. Mrs. Bacon was asked by appellant to come to the trial a week prior to her testimony. The court questioned the witness when her testimony was challenged on the ground that she had not been in the witness room. She conceded that she had been told by appellant and his wife, in general, what previous witnesses had testified, and more particularly that the appellees' witnesses had testified that the old road had existed for many years. We have grave misgivings about the ruling of the court under the circumstances, however Mrs. Bacon's testimony was placed in the record and it is

very clear that it was cumulative to the testimony of a number of other appellant witnesses. It was particularly similar to the testimony of her father, Leland Killebrew. We are unable to say the appellant was prejudiced.

The third of appellant's contentions is that the trial court should have ruled as a matter of law that appellees had failed to prove that the road was used by the public adversely to the rights of appellant. One of our leading cases on this point is *Fullenwider v. Kitchens,* 223 Ark. 442, 266 S.W. 2d 281 (1954). There it is stated: "All our opinions are in harmony on one point, *viz.:* Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right".

Witness Robert Taylor, 84 years of age, said he had lived on the south edge of Ridge Route Road for the past 60 years. He said the road went north to Woodrow Bratcher's cabin, then on north to Gilbert Sandford's home, thence further north to Virgil Brown's home and there it joins an east and west public road; that the county grades Ridge Route Road and has done so since 1962; and that people have traveled the road over the past sixty years. He related that at one time there was a church on the road.

John Bratcher testified that his father owned the Wade lands before the latter bought them; that he was thoroughly familiar with Ridge Route Road and that it had been there for many years; that he bladed the road for the county in 1962; that the road was widened in 1965 by a man hired by the county; and that some twelve years ago appellant cut some trees across the road but the witness and some other men removed them within a week.

Robert Smith testified that he had been familiar with the road since the late thirties and that it generally follows the same route as always. He said that sometimes he used the road two or three times a year and at other times he would skip four or five years before going back. He said sometimes a car could not use the road because of the weather.

Witness Ed Bilbrey, 63 years of age, said he had been familiar with the road for about 50 years; that he had used it from one to twenty times a year; that the public used the road unobstructed except for the short period when appellant constructed the gate.

Ed Bilbrey, Jr., said he had been familiar with the road since 1957 and since that time had traveled it two or three times a year.

Witness Dot Foley lives within a mile of Robert Taylor's house. He said that for the most part the road was used by people fishing and hunting and by the few people living in the area of the road. He said the road was on approximately the same roadbed it was during the last fifty-four years.

Witness Bill Flippo is employed by the Game and Fish Commission and covers the area in question. He said he had traveled Ridge Route Road continuously for the past twenty-one years, mostly checking on hunters. He conceded that Mr. Brown had a cattle guard at his end of the road on the north but said he had never seen a gate at the north entrance. He said at one time there was a logging operation near the road and that fact made it difficult to get through with a car or truck.

Witness Leslie Clements said he first went over the road in 1923 and continued to travel it regularly until about 1950; that his travels since that time have been restricted to hunting. He said the road starts on the south at Mr. Taylor's house and comes out on the north at Mr. Brown's house and has been approximately in the same position, although slightly varied in spots.

Virgil Brown lives at the north end of the road and has known about Ridge Route Road since 1960. The public entered his unlocked gate to use the road. The road ended at Mr. Taylor's house.

Cebe Burrough said he had been familiar with the road for the past seventeen years and used the road on an average of three times a year. "The road has always been passable and people went through there, but in the winter time it would get real bad where you couldn't hardly get through there at all in a car."

Witness Earl Rorex is 68 years of age and a game warden. "I have been traveling Ridge Route Road for the last 25 or 30 years when I was a game warden and used the road so that I could check on hunters and fishermen in the area."

We could continue to recite the testimony of a number of other witnesses who used the road. The other evidence of appellees' witnesses, both on direct and then on rebuttal (eleven in number), follows generally along the lines of identification and use as related by the witnesses from whom we have recited. This does not mean that all the evidence favored appellees. In fact appellant produced some seventeen witnesses to sustain his position. However, we have weighed the evidence and we are unable to say that the finding of the chancellor was against the preponderance of the evidence. The point is, we conclude that the evidence preponderantly establishes public use for such a time as to bring into play the rule enunciated by *Fullenwider*, namely, that the usage was so long as to ripen into an absolute right.

Finally, it is argued that there was insufficient evidence to support the court's finding that the road had not been abandoned. Again, this is a fact question. We shall not abstract the evidence on the point, some of which was concededly offered by both sides. The essential testimony which sustains the finding of the chancellor is that of Robert Taylor, who said people have traveled Ridge Route Road "to the open road over the last sixty years", and that the road has been under

care of the county for eight years. There was evidence obstructions placed in the road by appellant had been shortly removed (even the gate had been taken down). Then there was the testimony of Woodrow Bratcher, who testified that since 1962 he had annually graded and dozed the road; and finally, there was evidence that some federal governmental agency had worked on part of the road. On the whole, we are unable to say the chancellor erred in finding no abandonment. Furthermore, the burden of establishing abandonment was on appellant. Once color of title was established by adverse possession, it became incumbent on appellant to show abandonment. *Wilson* v. *Spring,* 38 Ark. 181 (1881).

Affirmed.