Elsie ALEXANDER et al. *v.* Jerry C. CHAPMAN and
CRESTVIEW FAMILY CLINIC, P.A.

85-167                                                      711 S.W.2d 765

Supreme Court of Arkansas
Opinion delivered June 16, 1986

*Perroni & Rauls, P.A.*, by: *Samuel A. Perroni*; and *Wilson, Engstrom & Corum*, by: *William R. Wilson, Jr.*, for appellants.

· *Friday, Eldredge & Clark*, by: *W.A. Eldredge, Jr.* and *Calvin J. Hall*, for appellees.

DARRELL HICKMAN, Justice. This is a medical malpractice case. John Alexander was 53 years old when he died on October 1,

1979, from a heart attack. Dr. Jerry Chapman and the clinic with which he was then associated, Crestview Family Clinic, treated Alexander several times for symptoms that could have been heart related. On July 14 and 24, 1979, he was hospitalized and treated by Chapman and his associates. He was seen thereafter on August 1, 16 and 19, and September 26. Dr. Chapman was telephoned September 28 because Alexander was weak and had chest pains. He died three days later. Alexander's widow and son sued, claiming that the appellees failed to diagnose and treat Alexander's illness and, thus, failed to prevent his death. The trial lasted seven days, and the jury returned a verdict for the appellees.

The question on appeal is whether the trial court abused its discretion in failing to deal with the trial tactics of the appellees' attorney. Among the allegations are that counsel repeatedly and continually led witnesses and violated a pretrial order that prohibited the mentioning of certain matters. We do not, as a matter of course, reverse on the basis of such allegations even if they are borne out by the record. See, e.g., *Missouri Pac. R. Co.* v. *Sullivan*, 197 Ark. 360, 122 S.W.2d 947 (1939).

This case, however, presents the unique situation where counsel was repeatedly admonished and the court repeatedly sustained objections to the leading questions, was even presented with a motion to strike the testimony, yet counsel's conduct was not stopped. The trial court decided that striking the testimony was too severe a sanction, yet was unable to stop the leading. Counsel also violated pretrial orders. After the trial, a motion for a new trial was filed, citing violations of the pretrial order, comments by appellees' counsel, and counsel's conduct in examination of the witnesses. Now we must decide whether the trial court's decisions at the trial and in denying the new trial were an abuse of discretion. In doing so we must necessarily decide whether conduct of counsel, ordinarily a matter which lies within the court's sound discretion, can go so far that some sanction must be taken. There are limits to everything and when counsel cannot or will not abide by the rules of evidence and of the trial court, and the trial court cannot stop the violations, we have to. The contention on appeal is that although no one instance of counsel's conduct would be cause for reversal, all of the violations combined to deny the appellants a fair trial. We have to agree and the

only acceptable course is to reverse the trial court.

Before trial, appellants moved that the appellees be prohibited from mentioning certain matters during voir dire, arguments or any part of the trial. In a pretrial order the trial court granted the motion in the following instances relevant to this appeal: (1) there was to be no suggestion that a verdict for the appellants would be tantamount to a "conviction" of the appellees; (2) there was to be no suggestion of any "credibility enhancing" items such as religious activities; and (3) no suggestion that a verdict for the appellants would have a damaging effect on medical services.

The order was clearly violated in closing argument when appellees' counsel said, "you see, even $1.00 *convicts* my client of malpractice, doesn't it?" (Italics supplied.) Upon objection, the trial court asked counsel to rephrase the statement.

During opening and closing arguments, appellees' counsel stated that next to God, his family and his patients, the law suit was the most important thing in the doctor's life. No objection was made beyond the motion in limine and in the motion for a new trial. This was not a flagrant violation of the pretrial order.

In closing, appellees' counsel also said, "A judge once said, we've got to be careful in these cases not to make doctors guarantors of good results or a cure." Appellants' counsel objected that what another judge said is not the law. The trial court essentially overruled the objection and then appellees' counsel said, "And we must, therefore, be careful lest we find very few, if any, who would accept the responsibility of being a doctor, you see." The appellants contended in their motion for a new trial and argue on appeal that this violated the pretrial order prohibiting any suggestion that a verdict for the appellants would have a damaging effect on medical services. Again the statement is not a clear and undisputable violation of the pretrial order, but it does touch on a subject that was ruled prohibited. When these violations are considered along with the continued leading of witnesses during the trial, the errors become more significant.

Leading questions were continually used in the examination of appellees' experts. During direct examination of the appellees' expert witnesses, there were 28 objections to leading questions. Once the court admonished counsel without being prompted by

an objection. Fourteen objections were sustained. Three times there was no ruling. Twice the question was withdrawn by appellees' counsel. The appellants' objections were overruled nine times.

Before appellants' counsel asked for the sanction that appellees' counsel be prohibited from continuing to inquire after leading, the court admonished appellees' counsel five times, four times of which were of the court's own volition. For instance, once the court said, "[appellees' counsel], it is [leading], sir. I would appreciate it if you would ask questions rather than making statements and asking is that true." Another time the court said, "Yes, and I think that was pretty blatant leading that last time, [appellees' counsel]. Please, sir, let's please confine your questions to this gentleman to be questions." Finally appellants' counsel requested that if appellees' counsel continued to lead, that he be prohibited from inquiring further into the subject. The court responded to the request by admonishing appellees' counsel:

> The Court: Well, let's just take the last question, [appellees' counsel]. 'State whether or not millions have been spent in research into the causes of arteriosclerosis . . .' or whatever, however it ended. You know, obviously he's going to say. And in effect you're telling him what the fact is and you're telling the jury what the fact is and that has nothing to do with experts or anything else. That's just telling the witness, isn't this true, isn't this true, isn't this true. And that's what they're objecting to and that's what we're seeing a lot of. I suppose the proper way to ask that question is, what's being done in medical science to cure arteriosclerosis? And he would say, well, we're spending millions of dollars; rather than saying isn't millions of dollars being spent; isn't this a disease that's hard to cure; aren't people dying everyday from this disease, you know. Instead of saying, what's the effects of this disease; well, people die everyday. That's the reverse of it. That's what you're objecting to.

After an interjection by appellants' counsel, the court continued:

> Well, I know but I'm saying that's the last question that was asked and that's just clearly a leading question,

whether you say, state whether or not or isn't it true or whatever.

I don't know what the solution is because we're seeing a lot of leading questions and I certainly don't want to resort to that. Would it suffice if I just say, let's please, without having to go through this again, just please be circumspect in the questions you ask so that we're asking the party to state his testimony rather than yes or no, or yes, that's a fact, or no, that's not a fact, I agree with that or I don't agree. Which is really what you're asking yes, I agree with what you say, when you say state whether or not; yes, I agree with what you're saying, [counsel]. In which case as I said earlier, what we're doing is you're testifying or [appellees' counsel] testifying when he says it and all he's saying is, yeah, I agree with that fact you've just stated. And the jury says, well, [appellees' counsel] says that's true and the doctor says it's true, so —

\* \* \* \* \* \* \* \* \*

The Court: I don't think [appellees' counsel] is intentionally leading these witnesses. He's a tried and true trial attorney and he's trying the case as he best knows how. I don't think he's intentionally saying, I'm going to get another one in here and do this. But the problem arises and the question is — it's an ongoing problem — how to deal with this question. And I'm just advising [appellees' counsel] I think we're getting a lot of leading questions and relying upon him to protect us from that in the future.

After that there were five more objections to leading questions until appellants' counsel asked that the responses be stricken. The trial court refused but admonished appellees' counsel to "please confine your questions to questions." There were seven objections to leading questions after that. At one time appellants' counsel renewed their motion and the following colloquy occurred:

[Appellants' counsel]: Secondly, I despair of what to do with respect to leading questions. If I continue to object, I'm going to not only alienate the jury, but it's my impression that the defense counsel is trying to beat the

Court down on leading questions. And not only do I run the risk of alienating the jury, but if the Judge overrules me when they're leading, then that makes my other objections look bad. *So I move to strike the testimony of all of the defense witnesses* on the grounds that their testimony has been warped completely out of kilter by suggestive, leading questions. (Italics supplied.)

The Court: *Well, of course I'm not going to do that.* I don't think it's that serious. I think there is a constant problem with leading questions, [appellees' counsel]. And I don't know what to do about it either. I certainly don't want to strike your witnesses, but there are a lot of comments — and I forget the one about the nurse, but, you know, I thought, gee whiz, what does that have to do with the case, which is harmless in itself, but I don't know. Tell me what I do, [appellees' counsel]. Tell me how to handle it. You tell me. (Italics supplied.)

[Appellees' counsel]: Your honor, you've shown that counsel has a continuing objection to this and —

The Court: I don't think you're intentionally saying, I'm going to lead this man and lead this man. It's just the patterns of the questions that keep coming up. I'm getting sensitive to it now because I expect [appellants' counsel] to jump up every time there's a leading question and say, oop, here we go again. And I'm getting sensitive to it and I'm getting overreactive to it in the sense I'm waiting for it each time because I'm waiting for [appellants' counsel] to jump up. And they're getting oversensitive to it because they're very sensitive about the leading situation.

[Appellants' counsel]: That's the very importance of it right there, Your Honor. I know the jury is getting irritated with me for making what is a proper objection.

The Court: I don't think they are frankly. Unfortunately my experience has been that the most obnoxious — of course you're certainly not this — but the most obnoxious lawyers I have, in the sense I just finally said, sit down, we'll note you object to everything, they win big verdicts. They've bothered the devil out of me. They don't bother the

jury at all. So anyway the most extreme cases of objection I've seen have apparently not bothered the juries at all. And of course, you're not anywhere near anything like that. I'm just saying the worse case scenario I've seen has gotten some of the biggest verdicts, so I don't know that even has an effect on the juries, much against our common belief in the legal profession.

But in any event all I can do is encourage [appellees' counsel] to be more circumspect in your questions in the sense they're not leading, and to ask the witness a proper question which elicits a statement from him rather than asking him to agree with your statement, and to avoid any gratuitous comments like we had of the nurse about whatever it was, which necessitated another bench conference.

I don't think any great damage is being done to be honest with you, [appellants' counsel]. I don't think this is turning the case around and it's a situation in which the questions would not have been answered the same way if they'd been asked properly. It's not a situation where these witnesses are being led down the path. I know it's annoying to you and [appellants' counsel] and I know it's bothering the devil out of you and I'm getting to be bothered now because I'm sensitive to you all jumping up, and properly so, and I'm getting sensitive to the whole thing myself. I don't think it's determining the outcome of this case by any way, mean shape or form. It's just an annoying thing that's bothering you and it's beginning to bother me.

So I'm not going to strike the testimony. I'm going to caution [appellees' counsel] once again to watch that and avoid any sidebar comments and to quit leading his witnesses. And we'll note your objection for the record.

The motion was renewed one other time, and the trial court instructed the witness not to answer the leading question. Appellants' counsel asked that a continued objection be noted, which it was.

■ Improper leading includes improper suggestion and improper ratification. Wigmore, *Treatise on the Law of Evidence*

§ 769: *Callahan* v. *Farm Equipment, Inc.*, 225 Ark. 547, 283 S.W.2d 692 (1955). Suggestion occurs when a question indicates the answer desired and ratification occurs when a question is suggestive, contains factual detail which could and should originate with the witness and the witness adopts the detail and the form in which it is expressed. Denbeaux and Risinger, *Questioning Questions: Objections to Form in Interrogation of Witnesses*, 33 Ark. L. Rev. 439 (1979).

Following are examples where counsel improperly suggested the desired answers from his expert witnesses:

Q. All right. In your experience, does the computer overread or underread EKGs?

A. The computer tended to overread EKGs.

Q. And that's the way it should be, don't you agree?

A. I would prefer it that way.

Q. So that all doubt is resolved on behalf of the patient to try to give patient help if he needs it?

A. Every benefit of the doubt.

\* \* \* \* \* \*

Q. Now we know that there was no myocardial infarctions within one year prior to July of 1979 as a matter of truth and fact, don't we?

\* \* \* \* \* \*

Q. Then Doctor, it's unfortunate but true that in heart attack cases we really don't know about prior heart attacks and whether or not for sure the patient had one until, unfortunately, some day the patient dies and you can do an autopsy on him, isn't that true?

\* \* \* \* \* \*

Q. And the practice of medicine is based on what, Doctor?

A. The practice of medicine is based on, as nearly as possible, gathering objective data and then you have to interpret that data.

Q. And who has to interpret it?

A. The physician.

Q. And that's judgment, isn't it?

A. And that's judgment.

Q. Professional judgment.

A. That's professional judgment.

Q. Human judgment.

A. Human judgment.

\* \* \* \* \*

■ Some of the sanctions for leading questions recommended by the authors of the cited law review article are: striking the improper question and permitting a proper one, admonishment at the bench or before the jury, striking the improper question and refusing to allow counsel to reask, contempt, and mistrial. Denbeaux and Risinger, *supra.*

■ Here counsel repeatedly ignored the trial court's warnings concerning leading questions. The court conceded it could not or would not take action beyond admonishment. Only once did it instruct the witness not to respond. If counsel will not comply with the trial court's requests, then some sanction, with teeth, must be used against him. We are certain the leading would have stopped had the trial court granted appellants' motion to preclude further inquiry. The appellants were entitled to have the leading stopped.

■■ Trial courts by necessity are granted great power and discretion to preserve the order of their courtrooms. They have at their command numerous sanctions to see that rules are followed. Because the sanctions exist they are usually not necessary, but sometimes they must be used. Some sanctions should have been used in this case. The appellants were entitled to have the case presented to the jury in the words of witnesses not counsel. In finding an abuse of discretion in not employing those sanctions, we emphasize that our decision is necessarily limited to the facts this record presents.

The appellees urge us to find no error because the appellants failed to move for a mistrial, to object during closing argument, or

to demonstrate prejudice. In this case, as counsel for the appellants pointed out, it would have been to the appellees' benefit to have a mistrial declared since it is they who are seeking to preserve the status quo. Repeated objections were made and timely motions made giving the trial judge an opportunity to stop the tactics. The trial judge essentially conceded he could not stop counsel. The impression left with the jury could not help but prejudice the appellants' case.

While the responsibility for the conduct of the trial falls on the trial court, experienced counsel should not go too far in testing the patience of the system. Besides continued leading and violating the pretrial order, appellees' counsel asked an expert whether he believed Dr. Chapman to be negligent. Counsel knew full well that the answer was an impermissible opinion on the ultimate issue and withdrew the question upon objection. There should be no attempt to elicit such evidence on retrial.

Appellants make other arguments about sidebar comments of appellees' counsel and statements made in argument that were allegedly unsupported by the evidence. The instances will not occur on retrial, and, even so, the trial court's ruling will not be disturbed on appeal. We have no way to determine simply from the record the effect of these comments or the spirit in which they were made and we must rely on the trial court's sound discretion.

Reversed and remanded.

HOLT, C.J., and PURTLE, J., not participating.