Particia BLAYLOCK *v.* Paul STRECKER

86-154                                724 S.W.2d 470

Supreme Court of Arkansas
Opinion delivered March 2, 1987

342

*James A. McLarty*, for appellant.

*Harkey, Walmsley, Belew & Blankenship*, by: *John Norman Harkey*, for appellee.

ROBERT H. DUDLEY, Justice. Appellee, Paul Strecker, filed a suit for alienation of affections against appellant, Patricia Blaylock, alleging that appellant had caused the destruction of appellee's marriage to Chloe Strecker. The jury found in favor of appellee Strecker and awarded $50,000.00 compensatory and $250,000.00 punitive damages. We reverse and remand for a new trial.

Appellant's first point of appeal concerns a ruling by the trial

court which excluded the testimony of Debbie Strecker, the 20-year-old daughter of appellee and Chloe Strecker. The proffer of Debbie's testimony reflects that three to four weeks before the trial she contacted appellee's lawyer and told him that her mother, Chloe Strecker, and appellant Blaylock were not homosexual lovers and that marital strife had existed between her parents for years. According to his brief, appellant's lawyer had not contacted Debbie because he did not wish to involve her in a trial with her father on one side and her mother's alleged homosexual lover on the other. The record only discloses that Debbie was not subpoenaed to appear as a witness, but that she did attend the trial as an interested spectator. There, she heard her father's attorney's opening statement, in which he said, in part:

> Paul is going to tell you that he has been hurt emotionally. That in his opinion his family life has been ruined, and the lives of at least two of his children ruined. This woman gives them marijuana. This woman right here gives his son Chip, who is 16 years old, and I'll prove it to you. . .

Following the completion of appellant's opening statement, Debbie approached appellant's attorney and said that appellee's opening statement was not true and that she wanted to testify to that effect. Appellant's attorney notified the court and appellee's attorney, and Debbie was placed under the rule. The next day the appellant called her as a witness. The appellee objected because she had not been listed as a witness and because she had heard opening statements. The trial court ruled that appellant was not surprised by the witness and refused to exclude her testimony on the basis that she was not listed. However, the trial judge did exclude the testimony for the reason the witness had heard opening statements. The ruling was erroneous.

Both parties agree Debbie's proffered testimony was material. In fact, in his brief appellee states: "As the eldest child of the Streckers, she would have been in a position to understand the relationship between her parents and many of the other matters which were to be testified to during the trial. To that there is no question."

The rule providing for the exclusion of witnesses, A.R.E. Rule 615, may involve three different types of rulings by a

trial judge, and each type presents a different standard for the judge. The first sentence of the rule provides: "At the request of a party the court *shall* order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion." (Emphasis added.) The standard of discretion given to the trial judge by this part of the rule is that of no discretion. If a party requests the rule, it must be granted.

The remainder of the rule provides: "This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause." Under this phase of the rule, on deciding whether a person should be sequestered because he is an officer or employee of a party, or person whose presence is necessary, the standard of discretion afforded a trial judge is average discretion. *Home Mutual Fire Insurance Co.* v. *Riley*, 252 Ark. 750, 480 S.W.2d 957 (1972); *Arkansas Power & Light Co.* v. *Melkovitz*, 11 Ark. App. 90, 668 S.W.2d 37 (1984).

The third phase, and third different standard, arises when a witness has been ordered sequestered, but does not comply. The rule does not mention the consequences of noncompliance with an order of exclusion, and therefore the sanctions are a matter of case law. The three possible methods of enforcement available to the trial judge are: (1) citing the witness for contempt, (2) permitting comment on the witness's noncompliance in order to reflect on her credibility, and (3) refusing to let her testify. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* 614-15 (1986).

The first option, citing the witness for contempt, was not a viable alternative under the facts of this case. The second option, and the one favored in this State since 1855, *Pleasant* v. *State*, 15 Ark. 624, 650 (1855), and favored by federal courts since 1893, *Holder* v. *United States*, 150 U.S. 91 (1893) was available, and its use would have been proper. It was error to use the third option, exclusion.

A trial court has very narrow discretion to exclude the testimony of a noncomplying witness. *Harris* v. *State*, 171 Ark. 658, 285 S.W. 367 (1926); *Williams* v. *State*, 258 Ark. 207, 523

S.W.2d 377 (1975); *Norris* v. *State*, 259 Ark. 755, 536 S.W.2d 298 (1976). Our standard on the exclusion of a witness's testimony remains as it has been for many years, a standard of narrow discretion. That narrow discretion can be exercised by the trial judge only when the noncompliance is had with the consent, connivance, or procurement of a party or his attorney. In *Norris* v. *State*, 259 Ark. 755, 536 S.W.2d 298 (1976), we quoted with approval the following language from *Williams* v. *State*, 258 Ark. 207, 523 S.W.2d 377 (1975):

> The rule consistently applied by this court is that a violation by a witness of the rule of sequestration of witnesses, through no fault of, or complicity with, the party calling him, should go to the credibility, rather than the competency of the witness. *Harris* v. *State*, 171 Ark. 658, 285 S.W. 367; *Hellems* v. *State*, 22 Ark. 207; *Golden* v. *State*, 19 Ark. 590; *Pleasant* v. *State*, 15 Ark. 624.

In the case of *Wade* v. *Moody*, 255 Ark. 266, 500 S.W.2d 593 (1973), one of the parties told the noncomplying witness what the prior witnesses had testified to, and yet we went so far as to say that exclusion was not the proper remedy. In the case at bar no complicity between the noncomplying witness, the party calling her, or the party's attorney is even suggested and the witness should have been allowed to testify.

In *Norris* v. *State*, 259 Ark. 755, 536 S.W.2d 298 (1976), we additionally quoted from *Williams* v. *State*, 258 Ark. 207, 523 S.W.2d 377 (1975) as follows:

> The power to exclude the testimony of a witness who has violated the rule should be rarely exercised. We have been unable to find any case in which this court has sustained the action of a trial court excluding the testimony of such a witness. While the witness is subject to punishment for contempt and the adverse party is free in argument to the jury, to raise an issue as to his credibility by reason of his conduct, the party, who is innocent of the rule's violation, should not ordinarily be deprived of his testimony. *Harris* v. *State, supra*; *Aden* v. *State*, 237 Ark. 789, 376 S.W.2d 277; *Mobley* v. *State*, 251 Ark. 448, 473 S.W.2d 176.

We are still unable to find any case in which this Court has

sustained the action of a trial court in excluding a witness for noncompliance.

The appellee argues that we should not be governed by the above cases because most of them are criminal cases. While it is true there are additional constitutional considerations in criminal cases, the sequestration of witnesses is not limited to criminal cases, and the reasons for not excluding the relevant testimony apply to both civil and criminal cases. In addition, the scarcity of civil cases on the subject probably is due to the history of the statutes. The civil predecessor to A.R.E. Rule 615 dates back to the civil code and was permissive; that is, it provided that the trial judge "may" exclude from the courtroom any witness of the adverse party. Ark. Stat. Ann. § 28-702 (Repl. 1979); *Vaughn* v. *State*, 252 Ark. 505, 479 S.W.2d 873 (1972). On the other hand, the criminal rule was mandatory, that is, the judge "shall" exclude any witnesses. Ark. Stat. Ann. § 43-2021 (Repl. 1977); *Vaughn* v. *State, supra*. Obviously, the rule would have been used more often in criminal cases, and there would be more criminal appeals.

Appellee cannot bring himself within the harmless error rule. Accordingly, we must reverse on this first assignment of error. We discuss the other points of appeal because they are likely to arise again upon retrial.

■ Appellee and his counsel repeatedly violated a court order prohibiting the mention of certain matters and appellee's counsel frequently led witnesses. We doubt that such acts will reoccur at retrial, but if they do, the trial court can (1) admonish the witness or the attorney at the bench or before the jury, (2) strike the improper question and either permit a proper one or refuse to allow counsel to re-ask, (3) cite the offender for contempt, and (4) declare a mistrial. *Alexander* v. *Chapman*, 289 Ark. 238, 711 S.W.2d 765 (1986). With this arsenal of sanctions, a trial judge should be able to prevent repeated violations of pretrial orders and leading of witnesses.

■ If the trial judge allows frequent and repeated violations, over timely objections, we will reverse. *Alexander* v. *Chapman, supra*.

■ The third point of appeal concerns an evidentiary

ruling. The trial court allowed the appellee to prove that appellant had a homosexual relationship with his wife. In an alienation action, it is permissible to prove a sexual relationship, though such conduct is not an essential ingredient of the cause of action. The trial court, in addition, allowed the appellee to prove that the appellant had previously, but recently, engaged in a homosexual affair with another woman and circumstantial evidence indicated that she knew that she had alienated the other woman's affections. The appellant contends that the latter ruling was in error. The assignment of error is without merit, and the evidence may again be permitted at retrial.

In *Johnson* v. *Truck Insurance Exchange*, 285 Ark. 470, 688 S.W.2d 728 (1985), we determined that A.R.E. Rule 404(b) applied to civil cases. Thus, our general rule is that appellant's prior act would not be admissible to prove that she acted in conformity therewith. The evidence may, however, be admissible to show appellant's intent or motive.

In an action for alienation of affections, one of the elements of proof is that the defendant acted with the intent to do a wrongful act. *Hodge* v. *Brooks*, 153 Ark. 222, 240 S.W. 2 (1922). Evidence of a defendant's state of mind and motives with respect to the plaintiff's spouse is admitted, with latitude, to prove such state of mind and motives; however, irrelevant evidence, under the guise of such purposes, tending instead only to arouse the prejudice of the jury, is not admissible. 41 Am. Jur. 2d *Husband and Wife* § 495 (1968). The real issue then is whether the evidence of the prior affair has independent relevance to prove intent.

Although discussing criminal cases, the following quotation from *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954) is pertinent:

> The issue of intent is *theoretically* present in every criminal case, and for that reason it is here that we are most apt to overlook the basic requirement of independent relevancy. Professor Stone, in the article cited above, has cogently demonstrated how easy it is to reason in this manner: Evidence to prove intent is admissible, and since the present case involves intent the proof should be received. 51 Harv. L. Rev. 988, 1007. What has happened

is that the emphasis has shifted from evidence *relevant* to prove intent to evidence *offered for the purpose* of proving intent, by showing that the defendant is a bad man. If this transfer of emphasis is permitted the exclusionary rule has lost its meaning.

The evidence submitted in this case was independently relevant to prove intent. The evidence concerning the prior affair showed that the other woman was married to a pharmacist and had children. Her little boy had been run over by a car. Appellant went to work for the other woman's husband in the pharmacy. Over a period of time, appellant became very friendly with the other woman, and ultimately entered into a homosexual relationship with her. Appellant made derogatory statements about the woman's husband such as, "he wasn't understanding," "was never at home," "didn't express love," and that she "deserved someone better." Circumstantial evidence indicated that appellant knew that the affair had caused the other woman to be alienated from her husband and had damaged her to the extent that hospitalization for psychiatric treatment was necessary.

The circumstances leading up to the relationship which caused the suit at bar were strikingly similar. Chloe Strecker was married to a pharmacist, appellee, and had children, one of whom was struck and killed by an automobile. Appellant went to work for Chloe's husband in his pharmacy. According to the appellee's evidence, she entered into a homosexual relationship with Chloe and made derogatory statements about him.

Manifestly, the evidence from the first affair has independent relevance to show that appellant knew the result of the first affair, and therefore, entered the Strecker relationship with the conscious purpose of causing the same result. The trial court was correct in permitting the evidence. *Accord, Golding* v. *Taylor*, 23 N.C. App. 171, 208 S.E.2d 422 (1974).

Appellant's final point also involves another evidentiary ruling. The appellee offered, as part of his case-in-chief, the testimony of Father Ralph Esposito, a Catholic priest. Father Esposito had listened to a recording of a telephone tap of a conversation between appellee's wife, Chloe Strecker, and appellant. The recording was destroyed by Chloe Strecker after the witness listened to it. The core of the priest's testimony was that in

the conversation Chloe Strecker asked appellant, "do you want me to fuck you?"

The trial court denied appellant's motion in limine to exclude the testimony. Appellant argues that the statement was hearsay and should have been excluded. Appellee argues it was not hearsay as it was not offered in evidence for the truth of the matter asserted. We have included the undisguised statement in this opinion because, as any reader can see, the statement could be used solely to prove that the statement was made, or it could be used as probative evidence to show a homosexual liaison.

Appellee's argument at the hearing on the motion in limine to exclude the evidence and appellee's opening statement clearly demonstrate that the statement was intended to be and, in fact, was used to prove the truth of the matter asserted.

During the argument on the motion, appellee's attorney said in the pertinent part, "It is more probative on the point than any other evidence which we can procure with reasonable efforts. It is essential to our lawsuit. It is the only exact probative evidence that we have of this sexual liaison." The argument showed that appellee intended to use the statement to prove its contents, and the trial judge should have excluded it.

Further, in opening statement, counsel for appellee said, in part:

> Paul took this recorded telephone conversation to his Priest, and the Priest is going to tell you that before the conversation was completed, that is, before they listened to all the conversation, the Priest is going to tell you he observed this man get physically sick. Paul and his brother, Andrew, was there. Paul excused himself from the room. The Priest is going to tell you that he took this telephone conversation on equipment that he has so he could clearly hear everything that was said between Chloe Strecker and this person, Blaylock. And he is going to describe to you a situation where it was like man and woman lovers talking to each other on the telephone. And he is going to describe to you in sexually explicit language what was said between these two lovers. And I'm talking about Chloe and this woman Blaylock.

The Priest is further going to tell you that this was probably a year and a half ago. He did not tell Paul about all of the sexually explicit language on that recording at that time. And in fact, told him only very recently. Paul excused himself because he became physically ill, hearing this conversation with his wife and her lover, because that's obviously what it was.

The above quotation from appellee's opening statement demonstrates that appellee used the statement to prove the truth of the matter asserted. It was hearsay. The only real question is whether, upon retrial, the testimony should be admitted under the residual-hearsay exception. *See* A.R.E. Rule 803(24) and 804(b)(5). This court carefully noted in *Hill* v. *Brown*, 283 Ark. 185, 672 S.W.2d 330 (1984), that all the common-law exceptions to the hearsay rule are based either upon necessity or upon some compelling reason for attaching more than average credibility to the hearsay, and that any new exception must have circumstantial guarantees of trustworthiness equivalent to those supporting the common-law exceptions. In determining that trustworthiness, the court must, under the language of the residual-hearsay rule, determine that (1) the statement is offered as evidence of a material fact, (2) the statement is more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts, and (3) the general purposes of these rules and the interests of justice will best be served by admission of the statements into evidence.

Here, the hearsay statement was that of appellee's wife, Chloe. Appellant's argument takes no issue with whether a tape actually had been obtained of a conversation between Chloe and herself. In fact, Chloe testified at trial, stating her son had given tapes to her which he took from appellee's bedroom and that one of the tapes contained a conversation between appellant and herself. She denied, however, that the tape contained any sexual references or suggestions.

Chloe also admitted that she destroyed the tapes. It was this action, and the son having taken the tapes, that made it necessary for appellee to call Father Esposito as a witness. Father Esposito listened to the entire tape which contained a conversation

between two women. He recognized one voice as Chloe's, but the other he could not identify except Chloe referred to the person as Trish or Trisha. Those names, Chloe testified, were ones she used when referring to appellant.

In sum, it appears undisputed that appellee secretly taped a conversation between Chloe and appellant, knew and recognized the voices of each, and took the tape to Father Esposito, who, unlike appellee, heard the entire tape, including the sexually explicit statement now in issue, and he too recognized Chloe's voice. He further identified the person to whom Chloe spoke as Trish or Trisha—a name Chloe used in referring to appellant. Under these circumstances, there is little room to doubt the trustworthiness of the text of the testimony given by Father Esposito. Upon retrial, the testimony should again be allowed.

Though not argued by appellant, it has been suggested in our conferences involving this case that the tort of alienation of affections is an outdated cause of action, should be abolished, and this case should be dismissed, instead of remanded. The appellant did not present such an argument either at trial or on appeal, and we will not raise it ourselves. As we said in *Arkansas Kraft Corp. v. Johnson*, 257 Ark. 629, 519 S.W.2d 74 (1975):

> Nowhere in appellant's brief is such an argument presented. In other words, such a position was neither taken at the trial court level nor is it set forth here. No citation of authority is necessary in saying that, aside from jurisdiction, we do not reverse cases on theories not presented by appellant to either the trial court or this court.

Reversed and remanded.

HICKMAN and PURTLE, JJ., concur in part and dissent in part.

DARRELL HICKMAN, Justice, concurring. Alienation of affection is a civil action that should be abolished. I have yet to see the case where affection existed to be alienated. The affections are gone by the time the new suitor makes his or her move. Furthermore, this action is for vengeance not for justice.

Bitterness permeates these suits and this case epitomizes the

damage done to all parties in such lawsuits. The appellant's personal life has been invaded beyond the limits of decency; her character has been demolished beyond repair. The appellee has embarrassed himself and his children. He has probably achieved his purpose which is vengeance, but at what price? The former spouse, the pawn in this tragedy, having been through a personal emotional tragedy, will probably spend the rest of her life trying to restore her psyche to a semblance of normalcy. The damage to the children is immeasureable. Only the lawyers won.

The other side of this coin is that the law should provide a forum for a wrong, and those who indeed steal the affections of another, which "belongs" to a third person, should pay; it is better to resolve the conflict in a court of law than in the streets. Our legal system should not lend itself to such proceedings. The law has no obligation to pacify, condone or tolerate every real or imagined wrong people can suffer at the hands of their fellowmen. Sometimes people simply need to walk away from a problem and accept it. This is one of those cases. The courts cannot solve all of society's ills, and we should not lend them to those who do not seek justice. By becoming a channel for such personal feelings, we demean the purpose of the courts. We historically avoid some lawsuits: political and religious disputes and disputes between parents and children. We should quit hearing cases such as this.

I would reverse and dismiss.

PURTLE, J., joins.