**Sue HILL, Brenda Robinette, Kathy Kelly, Diane Baker and Jeanette Cordell, Plaintiffs,**

v.

**SOUTHSIDE PUBLIC SCHOOLS; Bobby Smith, Individually and as Superintendent of Southside Public Schools, and Clive Blount, Individually and as Personnel Director of Southside Public Schools, Defendants.**

No. B–C–84–133.

United States District Court, E.D. Arkansas, N.D.

June 16, 1988.

494

Marsha Barnes, Paul J. Ward, Little Rock, Ark., for plaintiffs.

G. Ross Smith, Dan Bufford, Laser, Sharp & Mayes, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

The five plaintiffs in the case at bar were school teachers with the Southside Public School District who were terminated or resigned under pressure after they complained to the State Department of Education about the district's failure to adequately administer a special education program. The defendants were the following entity and individuals: (1) the Southside Public School District; (2) Bobby Smith, individually and in his official capacity as Superintendent of the school district; (3) Clive Blount, individually and in his official capacity as Personnel Director for the school district; (4) John S. Mitchum, (5) Vernon Cummings, (6) Larry Greenfield, (7) Dwayne Millikin, and (8) Will Roberts, individually and in their official capacities as members of the school district's board of directors; and (9) Tim Sisk, individually and in his official capacity as Principal of the Southside Elementary School. At the close of the July 10, 1986 trial, the jury returned verdicts against all the defendants in an amount totalling $215,000. The total reflected an award of $110,000 in compensatory damages and $105.000 in punitive damages. Each plaintiff received awards in various amounts to be paid by different defendants.

IT IS CONSIDERED, ORDERED AND ADJUDGED that plaintiff Diane Baker do have and recover against the Board of the Southside Public School District, against Bobby Smith, individually and as superintendent of the Southside Public Schools, and against Clive Blount, individually and as personnel director of the Southside Public Schools, the sum of

$30,000.00 jointly and severally as compensatory damages. In addition, plaintiff Diane Baker shall have and recover the sum of $10,000.00 in punitive damages against defendant Bobby Smith and $10,000.00 in punitive damages against defendant Clive Blount.

IT IS CONSIDERED, ORDERED AND ADJUDGED that plaintiff Jeanette Cordell do have and recover against the Board of the Southside Public School District, against Bobby Smith, individually and as superintendent of the Southside Public Schools, and against Clive Blount, individually and as personnel director of the Southside Public Schools, the sum of $25,000.00 jointly and severally as compensatory damages. In addition, plaintiff Jeanette Cordell shall have and recover the sum of $10,000.00 in punitive damages against defendant Bobby Smith and $15,000.00 in punitive damages against defendant Clive Blount.

IT IS CONSIDERED, ORDERED AND ADJUDGED that plaintiff Sue Hill do have and recover against the Board of the Southside Public School District, against Bobby Smith, individually and as superintendent of the Southside Public Schools, and against Clive Blount, individually and as personnel director of the Southside Public Schools, the sum of $25,000.00 jointly and severally as compensatory damages. In addition, plaintiff Sue Hill shall have and recover the sum of $10,000.00 in punitive damages against defendant Bobby Smith and $15,000.00 in punitive damages against defendant Clive Blount.

IT IS CONSIDERED, ORDERED AND ADJUDGED that Kathy Kelly do have and recover against Bobby Smith, individually and as superintendent of the Southside Public Schools, and against Clive Blount, individually and as personnel director of the Southside Public Schools, the sum of $5,000.00 as compensatory damages and in addition, the said Kathy Kelly do have and and recover

from each of said defendants Bobby Smith and Clive Blount the sum of $10,-000.00 in punitive damages.

IT IS CONSIDERED, ORDERED AND ADJUDGED that Brenda Robinette do have and recover from the defendant Bobby Smith, individually and as superintendent of the Southside Public Schools, the sum of $25,000.00 as compensatory damages and in addition, that she recover the sum of $15,000.00 as punitive damages from Bobby Smith, individually and as superintendent of the Southside Public Schools.

*See* Judgment at A8–A10. The defendants thereafter appealed to the United States Court of Appeals for the Eighth Circuit, 827 F.2d 270. The appeal of the school district was filed and docketed as No. 86–2125EA.[1] The appeal of Messrs. Smith and Blount was filed and docketed as No. 86–2126EA. At some point prior to oral argument in the latter appeal, the parties entered into an agreement whereby the plaintiffs agreed to some type of release for Messrs. Smith and Blount and those defendants, in turn, agreed to dismiss their appeal and tender $100,000. This series of events occurred. The parties failed, however, to reduce their agreement to writing, and a dispute has now arisen as to the perimeters of their agreement.

It would appear to the Court that the proper resolution of this dispute initially involves determining the extent of the release given defendants Smith and Blount in the agreement. They maintain that the agreement was for them to be dismissed by the plaintiffs in both their individual and official capacities.

[T]he settlement proceeds tendered by Separate Defendants, Blount and Smith, was for a full and complete release of any and all claims against them, both in their individual and official capacities; that counsel for Separate Defendants, Blount and Smith, since the filing of an Answer on their behalf, has always rep-

1. The appellants in this appeal were the school district and the members of the school district's board of directors in their individual and official capacities. They were represented by sepa-

rate counsel. Mr. Sisk was not involved in any appeal. He had been dismissed by the trial court on a motion for a directed verdict.

resented them both in their individual and official capacities; that it is contrary to reason for Plaintiffs' counsel to believe that said settlement was made in only one capacity and not the other; furthermore, the documents attached hereto reflect otherwise; that neither counsel for Separate Defendants, Blount and Smith, nor their liability insurance carrier would have paid $100,000 to settle only the punitive damage claims which were only $5,000 in excess of that amount paid; furthermore, it could not pay that kind of money and leave Defendants still exposed to the Judgment in an official capacity; ...

See Motion to Compel Satisfaction of Judgment at 7. Not surprisingly, the plaintiffs disagree with the defendants' understanding of their agreement.

The plaintiffs maintain that the $100,000 paid by Messrs. Smith and Blount satisfied only the punitive damage awards. It is also their contention that these defendants were released in only their individual capacities and not in their official capacities.

Plaintiffs deny that they settled with defendants Blount and Smith for those defendants' portion of any compensatory damage award. Plaintiffs accepted $100,000 from Blount and Smith as full payment of the punitive damage award and agreed not to seek execution of the compensatory damage award against those two individuals. Blount and Smith were dismissed from the case in their individual capacity. Blount and Smith in their official capacity are synonymous with the government entity, the school district.

Each plaintiff's compensatory damage award was assessed jointly and severally against either the district or one or both individual defendants in their individual and official capacities. The parties did not agree to settle the compensatory award, nor did they agree to any pro rata reduction of the district's joint and several liability.

See Plaintiff's Response to Defendant Southside Public School's Motion to Quash Writs of Garnishment at 1–2. The plaintiffs further clarified their position on the issue at bar in a later pleading.

Defendants' counsel, Dan Bufford, told plaintiffs' counsel that they could treat the settlement amount as punitive damages. Plaintiffs agreed to accept this amount for that portion of the damages and agreed not to seek execution of the remainder of the judgment against Blount's or Smith's personal assets, or against their carrier, Paxton National Insurance Company.

See Plaintiffs' Response to Defendants Blount and Smith's Motion to Compel Satisfaction of Judgment at 1.

■ At the outset, the Court recognizes that the settlement of any dispute is solely in the hands of the parties to the litigation. See, e.g., Gardiner, et al. v. A.H. Robins Co., 747 F.2d 1180, 1189 (8th Cir.1984).

"If the parties can agree to terms, they are free to settle the litigation at any time, and the court need not and should not get involved. * * * 'the traditional view is that the judge merely resolves issues submitted to him by the parties ... and stands indifferent when the parties, for whatever reason commends itself to them, choose to settle a litigation.'"

See Id. [quoting United States v. City of Miami, Florida, 614 F.2d 1322, 1330 n. 16 (5th Cir.1980), modified on rehearing, 664 F.2d 435 (5th Cir.1981). Once a settlement has been entered into between the parties to litigation though, this Court retains the inherent power to uphold and enforce their agreement. See, e.g., Gardiner, et al. v. A.H. Robins Co., 747 F.2d at 1190 n. 13. See also United States v. Mansion House Center, North Redevelopment Co., et al., 607 F.Supp. 392, 395 (E.D.Mo.1985), aff'd, 796 F.2d 1039 (8th Cir.1986); Southern Farm Bureau Life Insurance Co. v. Burney, et al, 590 F.Supp. 1016, 1022 (E.D. Ark.1984), aff'd, 759 F.2d 658 (8th Cir. 1985.)

In the case at bar, it is undisputed that the parties entered into an agreement in which part, or all, of the plaintiffs' claims against defendants Smith and Blount were settled. Given the authorities previously

cited, it is proper for the Court to attempt to uphold and enforce the agreement now before us by determining the perimeters of the settlement.

"Settlement agreements are contracts subject to the general rules of contract construction." *See N.L.R.B. v. Superior Forwarding, Inc.,* 762 F.2d 695, 697 (8th Cir.1985). Under Arkansas Law, an agreement between parties need not be reduced to writing in order to be enforceable. *See, e.g., Hunter v. Ward, et al.,* 476 F.Supp. 913, 919 (E.D.Ark.1979); *Pacific Industries, Inc. v. Mountain Inn, Inc.,* 232 F.Supp. 801 (W.D.Ark.1964). In addition, an agreement, whether written or oral, is not rendered unenforceable because its terms are vague and uncertain. *See, e.g., Swafford v. Sealtest Foods Division of National Dairy Products Corp.,* 252 Ark. 1182, 483 S.W.2d 202 (1972). The ultimate goal of this Court, in reviewing any agreement, is to construe the agreement so that the intent of the parties is given effect. *See, e.g., Louisiana-Nevada Transit Co. v. Woods,* 393 F.Supp. 177, 184 (W.D.Ark. 1975). We determine the intent of the parties by considering "the circumstances surrounding the making of the contract, its subject, and the situation and relation of the parties at the time of its making; ..." *See Id.* Moreover, the construction placed upon the agreement by the parties to it as reflected by their words and acts is entitled to great, if not controlling, influence in determining the parties' understanding of its terms. *See Id.*

■ Weighing the various factors which demonstrate the intent of the parties in the case at bar, the Court finds that it was their intent to enter into a full and complete dismissal of defendants Smith and Blount. Unquestionably, the words and acts of the defendants establish that they understood the agreement to include their full and complete release from the lawsuit. It would be pointless to recite the numerous examples establishing that fact; it is suffice to merely state that the defendants had that understanding.

Although less clear, the Court believes the words and acts of the plaintiffs establish that they agreed to give the defendants a full and complete release. First, as a preliminary matter, we would note that counsel for the defendants has represented these men in both their individual and official capacities since the inception of this lawsuit. It was with, and through, this attorney that the plaintiffs entered into an agreement contemplating the release of Messrs. Smith and Blount. We are aware of no evidence whatsoever tending to indicate that the plaintiffs were dealing with counsel in a limited role, *i.e.,* in his capacity as attorney for defendants Smith and Blount in only their official capacities. Second, it is undisputed that the plaintiffs received $100,000 from the defendants in settlement of some portion of this litigation. The Court agrees with the defendants that it is "contrary to reason" for them to have tendered that amount to settle only the punitive damage claims when that amount, $100,000, was a mere $5,000 less than what was actually owed the plaintiffs in punitive damages. In addition, it is "contrary to reason" to believe that the defendants would have tendered $100,000 to acquire the release in their official capacities yet remain exposed in their individual capacities. And third, it is also undisputed that the plaintiffs have promised not to "pursue [the] collection of the other claims against [defendants Smith and Blount]." *See* Plaintiffs' Response to Defendant Southside Public School's Motion to Quash Writs of Garnishment at 1. By their own admission, the plaintiffs refused to acquiesce to the defendants' full and complete release only because the former wish to "preserve [their] right to pursue the compensatory damages against the School District." *See* Exhibit L to Defendants' Motion to Compel Satisfaction of Judgment. It is equally clear that the school district remains liable for a portion of the compensatory damages awarded by the jury, and the release of defendants Smith and Blount does not prevent the plaintiffs from seeking satisfaction of a portion of the compensatory damage awards from the school district. Accordingly, the only reasonable meaning to the plaintiffs' words and acts is that they seek

no further relief from Messrs. Smith and Blount.

Given the foregoing, the Court finds that the parties agreed to dismiss defendants Smith and Blount from this lawsuit in both their individual and official capacities. The motion to compel satisfaction of judgment is granted. The plaintiffs are directed to execute the necessary release documents to conclude their claims against defendants Smith and Blount. The defendants' request to recover their costs and fees for pursuing their motion to compel is denied.

A related problem which arose out of the agreement entered into between the plaintiffs and defendants Smith and Blount is the amount of the jury award owed by the school district. This confusion prompted the school district to file a motion to quash the writs of garnishment filed against its assets and to "determine the liability of all defendants ..."

Arkansas has adopted the 1939 version of the Uniform Contribution Among Tortfeasors Act. *See Ark. Code Ann.* § 16–61–210. Section 4 of the act provides that a settlement with one of the tortfeasors reduces the claim against the other tortfeasor "in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid." *See Ark. Code Ann.* § 16–61–204. That section, in accordance with the act, contemplates that each tortfeasor will be credited with amounts paid by other tortfeasors. *See, e.g., Arkansas Kraft Corp. v. Johnson,* 257 Ark. 629, 519 S.W.2d 74, 76 (1975) [quoting *Giem v. Williams,* 215 Ark. 705, 222 S.W.2d 800 (1949)].

■ The situation presented in the case at bar is indeed novel. Although it is a close question, we believe that the school district should be given some credit for the $100,000 paid by defendants Smith and Blount in settlement. The only question to be resolved is in what amount its liability should be reduced.

As the Court previously noted, the jury verdicts in the case at bar totaled $215,000. Defendants Smith and Blount were liable for the entire amount, although their liability for $80,000 of the judgment was joint and several with the school district's. *See* Judgment at A8–A10. They paid the plaintiffs $100,000 or approximately .465 of the entire judgment, and were released from the lawsuit. Because fault was not apportioned by the jury, it is virtually impossible for us to determine what portion of the judgment the $100,000 satisfied. There is absolutely nothing in the record which supports the plaintiffs' claim that the $100,000 satisfied only the punitive damage awards and did not reduce the compensatory damage award given by the jury. We find that it would be patently unfair to merely assume the $100,000 did not satisfy a portion of the school district's liability. Accordingly, we find the most equitable result to be reducing the school district's liability by a percentage equal to the percentage of the judgment paid by Messrs. Smith and Blount, both of whom were responsible for the entire judgment. The $100,000 paid by defendants Smith and Blount satisfied .465 of the $215,000 judgment. The school district's liability is reduced in a like percentage and is reduced from $80,000 to $42,800.

Given the foregoing, the Court finds that the school district's motion to quash writs of garnishment should be, and is, granted to the extent that the writs seek satisfaction of a judgment against it in excess of $42,800. No costs and fees will be imposed on the parties.

■ On July 31, 1986, the plaintiffs filed a motion for attorneys' fees and expenses. They later supplemented that request on August 13 seeking to charge the defendants for fees and expenses incurred in responding to the five post-trial motions filed by the defendants. Seven days later the Court entered an order deferring consideration of both motions pending the outcome of the expected appeal of the jury verdicts. The case was appealed and subsequently affirmed. We received the mandate from the Court of Appeals on October 7, 1987. On January 13, 1988, the plaintiffs submitted a second supplemental motion for fees and expenses for work performed since the first supplemental motion was

filed. All three motions for fees and expenses are therefore before the Court.

The plaintiffs seek attorneys' fees pursuant to 42 U.S.C. § 1988. That section provides for the award of a "reasonable" attorney's fee to prevailing parties in actions under 42 U.S.C. § 1983. In this instance, the defendants acknowledge that the plaintiffs are entitled to an award of fees. Their only challenge, and the only question we must address, concerns the propriety of the amount of fees requested.

In determining the propriety of the attorneys' fee requested in the case at bar, the Court must first arrive at the "lodestar." The "lodestar" is an amount arrived at by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Phillips, et al. v. Weeks, et al.*, 586 F.Supp. 241 (E.D.Ark.1984). "'This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.'" *Taylor v. Belger Cartage Service, Inc.*, 102 F.R.D. 172, 181 (W.D.Mo.1984) [quoting *Hensley v. Eckerhart*, 103 S.Ct. at 1939]. The number of hours reasonably expended by counsel and his reasonable hourly rate are determined by considering the factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the customary fee; (5) whether the fee is fixed or contingent; (6) the amount involved and the results obtained; and (7) the experience, reputation, and ability of the attorneys. *See Id.* at 717–19.

Having arrived at the "lodestar," the Court may then adjust that amount if the prevailing party succeeds on less than all of the claims. *See Phillips, et al. v. Weeks, et al.*, 586 F.Supp. at 245–47. Any adjustment should be made pursuant to the criteria enumerated in *Hensley v. Eckerhart.*

In certain cases, the Court may take the "lodestar," determine that the prevailing party obtained a complete recovery, and enhance that amount. In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court held that to be entitled to an enhanced fee, the prevailing party must establish that an enhanced fee is necessary to provide fair and reasonable compensation.

With regard to the first motion for attorneys' fees, the plaintiffs ask the Court to approve 398 hours spent by Marcia Barnes on the case at a rate of $75 an hour. They also ask us to approve 254.6 hours spent by a second attorney, Paul Ward, at a rate of $70 an hour. In addition, they seek approval of 68.7 hours spent by two law clerks assisting the attorneys at a rate of $25 an hour.

The defendants have no objection to the various hourly rates requested by the plaintiffs; rather, their objections challenge the time sought to be compensated by the plaintiffs. First, they note that the total amount requested by the plaintiffs, $54,-744.47, is "significantly greater than the amount of fees generated by [the law firm representing the Southside Public School District]." *See* Brief at 1. Second, they maintain that 24.2 hours of research by the two law clerks on first amendment issues is excessive. Third, the defendants challenge five hours of time Ms. Barnes allegedly spent "for a telephone conference to reserve a room for depositions and for correspondence to opposing counsel and clients." *See* Brief at 2. Fourth, they note that Tim Sisk was dismissed as a defendant during trial. Having been dismissed, it cannot be said that the plaintiffs prevailed against him. The defendants argue that the plaintiffs are not entitled to reimbursement for the time spent in preparation of their claims against that defendant. Fifth, they maintain that a "large part" of the plaintiffs' lawsuit was brought under the Arkansas Teacher Fair Dismissal Act. Their being no provision for an award of fees under that statute, they contend that the plaintiffs' fee request should be "substantially reduced in recognition of that fact." *See* Brief at 2. Sixth, the defendants maintain that the plaintiffs should not

be compensated for any work their attorneys may have done during Administrative hearings and board meetings on the renewal of the school teachers' contracts. In support of that contention, they cite the Court to *Webb v. Board of Education of Dyer County*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), in which the Supreme Court held that a prevailing party under § 1988 was not entitled to recoup for time his attorney spent in pursuing optional administrative remedies before a local school board. Seventh, they argue that plaintiffs are attempting to be reimbursed for time spent considering whether to employ a "consultant or psychologist." No such testimony was offered at trial, and they maintain that their adversaries should not be compensated for that time. Finally, the defendants object to the plaintiffs seeking reimbursement for time spent consulting with representatives of the Arkansas Education Association.

As noted previously, Ms. Barnes requests an hourly rate of $75, and Mr. Ward asks the Court to approve an hourly rate of $70. In support of their requests, the attorneys have submitted affidavits from two lawyers practicing in the community. Those affidavits, the lack of any objection from the defendants, the attorneys' experience in civil rights litigation, and their skillful preparation and presentation of this case convinces us that their rates of hourly compensation are reasonable. In addition, we find that the rate of compensation requested for work taken on by their law clerks, $25 an hour, is reasonable.

Both Ms. Barnes and Mr. Ward have submitted itemized lists of the services rendered and the hours expended on behalf of their clients. They have also filed an itemized list of the services rendered and the hours expended by their law clerks. The plaintiffs acknowledge, and we agree, that "those hours appear to be contemporaneously maintained and accurate, ..." *See* Brief at 1.

The itemization of services submitted by Ms. Barnes indicates that she seeks to be reimbursed for time spent on the case beginning on May 7, 1984. Although the complaint at bar was not filed until October 22, the hours she expended prior to the filing of this complaint may be compensable if the time is "reasonably expended on the litigation." *Hensley v. Eckerhart*, 103 S.Ct. at 1939. The most obvious examples of compensable work performed before a lawsuit is formally commenced by the filing of a complaint are the drafting of the initial pleadings and "the work associated with the development of the theory of the case." *Webb v. Board of Education of Dyer County*, 105 S.Ct. at 1928–29. In reviewing the work performed by counsel prior to the commencement of this lawsuit, we find that she should be compensated for that work. She spent approximately five hours drafting the initial pleadings, and the plaintiffs are clearly entitled to be compensated for that "pre-complaint" work. Although not abundantly clear from her itemization, the remainder of her "pre-complaint" work can be said to be work "associated with the development of the theory of the case," and the plaintiffs are entitled to be compensated for that time.

Reviewing the remainder of the time expended by both attorneys and their law clerks, the Court is persuaded that the defendants' objections have no merit, save two challenges. We believe it irrelevant that the amount requested by the plaintiff is "significantly greater" than the amount of fees generated by the defendants' attorneys. In addition, we cannot say that 24.2 hours of research by two law clerks on important first amendment issues, which formed the basis of this lawsuit, is excessive. The defendants' challenge to the time expended in prosecuting the claims against Tim Sisk and the time spent pursuing claims under the Arkansas Teacher Fair Dismissal Act is without merit. Although admittedly, the plaintiffs did not prevail on their claim against Mr. Sisk and there is no provision for attorneys' fees under the Arkansas act, those claims share a common core of facts, and are based on related legal theories, with the claims on which they prevailed. Accordingly, this lawsuit cannot be viewed as a series of discrete claims. Focusing on the "significance of the overall relief obtained by the

plaintiff[s] in relation to the hours reasonably expended on the litigation," *see Hensley v. Eckerhart*, 103 S.Ct. at 1940, we find that this is time for which the plaintiff should be compensated. Finally, we are not persuaded that time the attorneys may have spent considering whether to employ a "consultant or psychologist" and time expended consulting with representatives of the Arkansas Education Association should be excluded from the "lodestar" determination. We find both items to be time spent in preparation of trial.

■ As noted previously, the defendants make two objections to the itemization of services submitted by Ms. Barnes which the Court finds to have merit. First, we are uncertain why 4.9 hours of counsel's time was needed to reserve a room for depositions and write letters to opposing counsel and her clients. We therefore reduce the number of hours required for those tasks to two hours. Second, we are convinced that *Webb v. Board of Education of Dyer County* compels us to reduce counsel's hours by the number of hours she spent before an administrative board. It is not clear to us how many hours were expended by counsel pursuing her clients' administrative remedies; and therefore, any reduction we make will be arbitrary at best. Reviewing the itemization of services submitted by Ms. Barnes, we reduce her number of hours by 34.2 hours.[2]

Having reduced Ms. Barnes' number of hours by 37.1 hours, we find that the plaintiffs should recoup for 360.9 hours of her time. Multiplying that number by $75 an hour, the "lodestar" for her time is $27,067.50. Mr. Ward will be allowed his request of 254.6 hours, and multiplying that number by $70 an hour, the "lodestar" for his time is $17,822. The "lodestar" for both attorneys is therefore $44,889.50.

Although admittedly, the plaintiffs did not prevail on every single claim asserted in this lawsuit, those claims were limited in comparison to the scope of the litigation as a whole. Those claims, and the ones on which they prevailed, were related in that the claims shared a common core of facts. Given that relationship, this Court will not reduce the "lodestar" simply because the plaintiffs did not prevail on each assertion. *See Hensley v. Eckerhart*, 103 S.Ct. at 1943.

The Court finds that the "lodestar" is a reasonable amount and that the plaintiffs should recoup attorneys' fees in that amount. In addition, we approve the hours expended by their law clerks, 68.7. We previously approved their clerks' rate of hourly compensation and accordingly permit the plaintiffs to be reimbursed for that expense in the amount of $1,717.50. Finally, we approve their costs and miscellaneous expenses in the amount of $5,354.97.

Following the submission of their first motion for fees, the plaintiff filed a supplemental motion. In that motion, they seek to be reimbursed for 3.6 hours of Ms. Barnes' time and for 23.6 hours of Mr. Ward's time. They also ask to recoup $211.85 in expenses. The defendants submitted no objection to the suplemented motion, and we find, considering the plaintiffs' request in light of the law previously outlined, that their request is fair. Accordingly, we approve their request for $270 for Ms. Barnes' time and $1,652 for Mr. Ward's time. We also approve the $211.85 they incurred in expenses.

Following the appeal of this case, the plaintiffs filed their second supplemental motion for fees and expenses. In that motion, they ask to be reimbursed for the time their attorneys expended in responding to five post-trial motions. Defendants Smith and Blount, in response to that motion, maintain that they should not be taxed for any fees and costs because they settled their portion of the case on appeal. "That Plaintiffs' supplemental motion for post-trial work and appellate work does not apply to these Separate Defendants for all those

---

2. As best the Court can determine, counsel prepared for an administrative hearing beginning May 6, 1985. Because not all of her work on that particular day appears to pertain to the hearing, her request is only reduced by .3 hours. However, the 33.9 hours she expended between May 7 and June 16 appear to be related to the hearing, and we therefore disallow those hours.

issues subsequent to the trial in this cause were settled between these parties in June of 1987." *See* Response at 1. The remaining defendants have submitted no objection to the second supplemental motion.

Considering the fees and expenses requested by the plaintiffs in their supplemental motion in light of the law previously outlined, the Court finds their fees and expenses to be reasonable and fair. The plaintiffs are therefore reimbursed for 22.9 hours of Ms. Barnes' time at $75 an hour, or $1,717.50 and for 9.5 hours of Mr. Ward's time at $70 an hour, or $665. They are also allowed to recoup 8.8 hours of law clerks' research at $25 an hour, or $220. In that defendants Smith and Blount dismissed their appeal on June 5, 1987, and were dismissed from this case as a result of their settlement, they will not be taxed for any fees and costs after that date.

In summary, the plaintiffs' motions for fees and expenses are granted. Ms. Barnes is allowed a total of 387.4 hours at $75 an hour, or $29,055. Mr. Ward is allowed a total of 287.7 hours at $70 an hour, or $20,139. The Court also approves 77.5 hours of time expended by their clerks at $25 an hour, or $1,937.50. Accordingly, the plaintiffs are entitled to attorneys' fees in the amount of $51,131.50. Finally we approve their request for a total of $5,566.82 in expenses.

The Court, given the foregoing, makes the following conclusions. First, the parties agreed to the dismissal of defendants Smith and Blount from this lawsuit in both their individual and official capacities. Their motion to compel satisfaction of judgment is granted, and the plaintiffs are directed to execute the necessary release documents to conclude their claims against those defendants. Second, the school district's liability in this case is reduced from $80,000 to $42,800, given the settlement amount tendered by defendants Smith and Blount. The school district's motion to quash writs of garnishment is granted to the extent that the writs seek satisfaction of a judgment against it in excess of $42,-800. Last, the plaintiff's motions for attorneys' fees and costs are granted. They are entitled to fees in the amount of $51,131.50 and expenses in the amount of $5,566.82.