GARVER & GARVER, P.A. *v.* LITTLE ROCK
SANITARY SEWER COMMITTEE

89-12                                                 781 S.W.2d 24

Supreme Court of Arkansas
Opinion delivered December 11, 1989
[Rehearing denied January 8, 1990.*]

*Wright, Lindsey & Jennings,* for appellant.

*Wallace, Dover & Dixon,* by: *Don F. Hamilton,* for appellee.

Wm. R. Wilson, Jr., Special Chief Justice. On November
5, 1975, the appellee/cross-appellant, Little Rock Sanitary
Sewer Committee (Committee), entered into a contract with

---

appellant/cross-appellee, Garver & Garver, Inc. (Garver) for engineering services in connection with the construction of the Fourche Wastewater Treatment Facility in Little Rock, Arkansas. Thereafter, other contracts were entered into between the parties for other engineering services during this construction.

Nielsons, Inc. (Nielsons), became the prime contractor. Georgia A. Hormel and Company (Hormel) contracted to supply the Rotating Biological Contractors (RBC) equipment for the plant.

Construction of the plant was completed in 1983. After operating for approximately one and one-half years, it became apparent that the plant was not capable of meeting design performance specifications. In September of 1985 the Committee filed suit for damages against Garver, Nielsons, Hormel and the bonding companies for Nielsons and Hormel. Subsequently, the complaint was amended to add the manufacturer of the RBC equipment.

After extensive discovery, the Committee entered into a settlement agreement with Hormel and Nielsons, and then dismissed its lawsuit against all defendants except Garver. As a part of the settlement, Nielsons and Hormel agreed to pay $2,500,000 to the Committee and to forgive the retainage held by the Committee. The retainage was $150,000, making the total settlement consideration $2,650,000. The Committee reserved and preserved its rights to pursue its lawsuit against Garver. The settlement agreement otherwise provided in pertinent part as follows:

> It is further agreed by the Sewer Committee that in the event other parties are responsible to the Sewer Committee for claims or damages resulting from the above-described disputed activities, the execution of this release shall operate as a satisfaction of any claims which the Sewer Committee might have against such other parties to the extent of the pro rata share of fault and/or liability of the parties herein released. Specifically, without limiting the applicability of the foregoing, *it is expressly agreed that the Sewer Committee may continue to pursue this suit or initiate any other suit against Garver and that Garver is not released hereby except to the extent*

*of the pro rata share of fault and/or liability of the parties released herein.* (Emphasis supplied.)

The Sewer Committee hereby covenants and agrees that it will seek no judgment or amount in the captioned case or any other case as to the disputed activities against Garver or any other party in excess of Garver's or such other party's pro rata share of fault. It is specifically the intent and effect of this covenant and this release to give the released parties final peace from any contribution, indemnity, or other claims against the released parties by other parties responsible to the Sewer Committee for claims or damages resulting from the disputed activities. If, contrary to the intent of this paragraph, the Sewer Committee recovers damages arising out of the disputed activities against Garver or any other parties and then Garver or other parties recover such damages against any of the released parties, the Sewer Committee shall reimburse the released party or parties for such damages which they paid.

It is specifically the intent of this settlement agreement that the Sewer Committee may continue the litigation or any other litigation against Garver or any other persons, firms, corporations, or legal entities subject to the terms and conditions of this agreement. For this purpose, subject to the pro rata release contained in paragraphs 6 and 7 of this agreement, the Sewer Committee reserves its rights against Garver and other parties not parties to this agreement to pursue and collect damages from Garver or such other parties equal or attributable to Garver's or such other parties' pro rata share of fault arising out of the disputed activities.

The case proceeded to trial on plaintiff's fourth amended complaint which was against Garver only. At the close of the evidence, and after the instructions, the court submitted the case to the jury on interrogatories. The pertinent interrogatories and the jury's answers thereto are as follows:

Interrogatory No. 1: Do you find from a preponderance of the evidence that Garver & Garver was guilty of *negli-*

*gence* which was a proximate cause of the occurrence? [Emphasis supplied.]

Answer: Yes.

Interrogatory No. 2: State the amount of damages which you find from a preponderance of the evidence were sustained by the Little Rock Sanitary Sewer Committee as a result of the occurrence.

Answer: $3,000,000.00 [Signed by ten jurors.]

Interrogatory No. 3: Do you find from a preponderance of the evidence that Hormel's RBC equipment failed to meet the performance required by the specification and such failure was covered by Hormel's guarantee and Hormel was, therefore, *liable by reason of the guarantee.* [Emphasis supplied.]
Answer yes or no.

Answer. [Yes was circled.]

If you answer the interrogatory "yes," then state what you find the extent (percentage) of liability of Hormel to be.

Answer: 50% [Signed by eleven jurors.]

One pertinent jury instruction was the following:

In these instructions and interrogatories I have used the term 'occurrence.' The term 'occurrence' has reference to the design of the Fourche Wastewater Treatment Plant, which the Little Rock Sanitary Sewer Committee contends caused its damages.

Garver objected to this instruction on the grounds that there was no need to define the word "occurrence" and, further, for the reason that it was not accurately defined.

The court further instructed the jury that:

The Little Rock Sanitary Sewer Committee is claiming damages from Garver & Garver for negligence and has the burden of proving each of three essential propositions:

First:    That it has sustained damages;

Second:    That Garver & Garver was negligent; and

Third:     That such negligence was the proximate cause of the Little Rock Sanitary Sewer Committee's damages.

The court also instructed:

If an interrogatory requires you to assess the damages for the occasion [sic] to Little Rock Sanitary Sewer Committee, you must then fix the amount of money which will reasonably and fairly compensate the Little Rock Sanitary Sewer Committee for the following two elements of damage sustained:

First: The reasonable and necessary cost of modifications and additions required to enable the Fourche wastewater treatment plant to operate in accordance with the contract performance specifications.

Garver objected to this instruction on the ground that it did not make specific reference to the amount plaintiff had already recovered in the way of settlement.

After considering post-trial motions filed by both parties, the court entered judgment on July 11, 1988, which set forth the above jury interrogatories and answers and otherwise provided in relevant part as follows:

Based upon the jury's answers to these interrogatories and the undisputed evidence in this case, including but not limited to the prior settlement between plaintiff and the original defendants except Garver, the Court finds that defendant Garver is liable for 50 percent of the total amount of damages indicated in the jury's answer to Jury Interrogatory No. 2, i.e., $3,000,000, because of the jury's answer to Jury Interrogatory No. 3 in which the jury found that defendant Garver is liable for 50 percent of the damages of $3,000,000, or $1,500,000; and said defendant's cross-complaint against cross-defendants Hormel and Nielsons should be dismissed with prejudice, and judgment is entered against Garver in the sum of $1,500,000.

Garver appeals, contending that Hormel was one hundred percent liable for the failure of the plant to meet specifications,

and that, therefore, the settlement agreement specifically released Garver from any liability, and that it was entitled to judgment as a matter of law. In the alternative, Garver contended that the total damage sustained by the Committee was $3,000,000 and that the trial court should have reduced the judgment against Garver by the settlement sum of $2,650,000, i.e., that the total judgment against Garver should be in the amount of $350,000.

The Committee cross-appeals, contending that it was entitled to judgment for the full amount of damages set forth in the answer to Interrogatory No. 4 (three million dollars).

Despite the fact that the jury found that Hormel's liability was fifty percent as a result of its breach of its guarantee that its RBC equipment would perform properly, Garver insists that Hormel is one hundred percent liable upon this guarantee.

The pertinent instructions and interrogatories are not models of clarity. We note, however, that neither party to this appeal asks that the case be remanded. The court is intrigued by Garver's assertion that Hormel was one hundred percent liable (in the face of the jury verdict), primarily because of the vigor with which this point has been urged by Garver in pre-trial pleadings, at the trial, in post-trial motions and on appeal. Garver, however, cites no authority for its position on this point, and we can find none.

■ The Committee argues, first, that Garver was guilty of fault in areas of the construction which were not directly related to the fault of Hormel in breaching its guarantee. Garver disputes this assertion, and the record, as we view it, is not entirely clear on this point. Be that as it may, Garver was found guilty of negligence which was a proximate cause of the damages in this case. Even assuming that Garver was negligent solely in failing to properly supervise Hormel in performing its contractual duties, Garver would not be absolved of liability in view of the jury's findings. *See Carroll-Boone Water Dist.* v. *M. & P. Equipment Co.*, 280 Ark. 560, 661 S.W.2d 345 (1983); *see also Scott* v. *Potomac Ins. Co. of the District of Columbia*, 217 Or. 323, 341 P.2d 1083 (1959); *Willner* v. *Woodward*, 201 Va. 104, 109 S.E.2d 132 (1959).

Accordingly, we reject Garver's first point on appeal.

In the alternative, Garver contends that it is entitled to a credit of the settlement amount of $2,650,000. Garver specifically contended, however, in its brief and during oral argument that "this is not a joint-tortfeasor situation" since Garver's liability was based upon negligence (fault) while Hormel's liability is based upon contract (guaranty). Thus, we do not reach the question of whether the Uniform Contribution Among Tortfeasors Act, Ark. Code. Ann. § 16-61-204 (1987) would have been applicable.

Garver contends, however, that it is entitled to a credit "as a matter of equity" under *Woodard* v. *Holliday*, 235 Ark. 744, 361 S.W.2d 744 (1962). In that case, we simply approved language from the annotation at 42 A.L.R.2d 958 which reads as follows:

> A master and servant are each liable for injuries caused by the negligence of the servant in the course of his employment. The servant is liable because he committed the tort and the master is liable under the doctrine of respondeat superior. While they may not be joint tortfeasors in the sense that their joint acts caused an injury, a majority of the courts hold that their liability is joint and several and each is liable to the full extent of the injuries and they may be joined in an action in the same measure as joint tortfeasors. The law of joint tortfeasors relating to releases and covenants not to sue is applicable.

As is set forth above, however, in this case Garver specifically and steadfastly contended that the parties were *not* joint tortfeasors. We, therefore, also reject this contention.

The Committee, as cross-appellant, contends that it should be presumed that the jury fixed the damages at $3,000,000 above the settlement figure of $2,650,000 because the settlement agreement, which included the settlement figure of $2,650,000, was introduced into evidence.

The settlement agreement expressly provided that, "Garver is not released hereby except to the extent of the pro rata share of *fault* and/or liability of the parties released herein." (Emphasis supplied.) It is clear under Arkansas law that fault in terms of negligence and fault in terms of contractual breaches can be compared by the jury.

Ark. Code Ann. § 16-64-122(c) (1987) provides as follows:

> The word 'fault' as used in this section, includes any act, omission, conduct, risk assumed, breach of warranty, *or breach of any legal duty* which is a proximate cause of any damages sustained by any party. (Emphasis supplied.)

In arguing that it should be presumed that the jury took into account the settlement figure and that, therefore, it is entitled to a $3,000,000 judgment, the Committee cites *Arkansas Craft Corp.* v. *Johnson*, 257 Ark. 629, 519 S.W.2d 74 (1975); *Gailey* v. *Stewart*, 236 Ark. 80, 364 S.W.2d 662 (1963); and *Giem* v. *Williams*, 215 Ark. 705, 222 S.W.2d 800 (1949). Each of these cases is distinguishable.

In *Giem*, the plaintiff settled with one of two joint tortfeasors just before the trial for the sum of $4,000. The case went to trial against the other tortfeasor and resulted in a verdict and judgment for $8,950. During the course of the trial, the settlement agreement (covenant not to sue) with the settlement figure of $4,000 was introduced. When the trial court refused to give the appellant credit for the $4,000 settlement, the appeal was taken. We held that "in such circumstances, appellants were not entitled to have the court—after the verdict—make the allowance again."

In *Giem*, the case was submitted to the jury on a general verdict; but, as we pointed out, in *Bailey* v. *Stewart, supra*, a case submitted on a general verdict (such as *Giem*) does "not quite reach the point at issue" when the case is submitted on interrogatories.

In *Bailey* v. *Stewart*, the settling tortfeasors paid $9,000 prior to trial, and this was introduced into evidence against the remaining tortfeasor. The jury returned the verdict for $10,000 for the husband-plaintiff, and the defendant-appellant contended that he should have been given credit for the settlement amount and, therefore, the judgment should have been in the sum of $1,000 *vice* $10,000.

The case was submitted to the jury on interrogatories and the crucial interrogatory read as follows:

> What do you find from the evidence, if any, to be the actual

damages sustained by the plaintiff, John L. Stewart, if any, *without reference to the amount of payment in settlement as made by Jimmy F. Cossey and Don D. Duvall?* (Emphasis supplied.)

The appellee argued that the italicized clause was the equivalent of "after first having deducted" the amount of the Cossey-Duvall settlement payment. We rejected this contention and stated, "we find it impossible to hold that a finding of the actual damages 'without reference' to the amount of a compromise settlement is in effect a finding of those damages after the amount of the settlement has been taken into account."

The case was remanded to the circuit court for a new trial in accordance with the alternative prayer of the appellee. There was no language in any interrogatory in the case at bar which was similar to the language in *Bailey*, and, further, the Committee declined to request a remand in the conclusion of its brief and again during oral argument.

*Arkansas Kraft Corporation, supra,* (evidently a general verdict case), is not helpful because it simply held that it was not error for the trial court to allow the plaintiff to introduce evidence of a pre-trial settlement with another tortfeasor.

In the case at bar, the instruction in which the trial court defined the word "occurrence" is as follows:

> In these instructions and interrogatories I have used the term 'occurrence'. The term 'occurrence' has reference to the design of the Fourche Wastewater Treatment Plant, which the Little Rock Sanitary Sewer Committee contends caused its damages . . . .

The jury interrogatory (which was answered by the jury in the sum of $3,000,000), read as follows:

> State the amount of damages which you find from a preponderance of the evidence which were sustained by the Little Rock Sanitary Sewer Committee as a result of the occurrence. . . .

Additionally, the court instructed the jury as follows:

> If an interrogatory requires you to assess the damages for

the occasion [sic] to Little Rock Sanitary Sewer Committee, you must then fix the amount of money which will reasonably and fairly compensate the Little Rock Sanitary Sewer Committee for following two elements of damages sustained:

First: The reasonable and necessary cost of modifications and additions required to enable the Fourche wastewater treatment plant to operate in accordance with the contract performance specifications; and

Second: The reasonable and necessary expenses incurred by the Little Rock Sanitary Sewer Committee for tests conducted to determine the cause of the Fourche wastewater treatment plant's failure to operate in accordance with contract performance specifications.

Garver objected to the two above quoted instructions, both offered by the Committee, and specifically stated that the last quoted instruction "makes no reference whatsoever to the fact that the Plaintiff has already recovered . . . by settlement . . . $2,650,000."

Perhaps it would have been better if the instructions or interrogatories had directed the jury to fix the amount of damages after first deducting the settlement amount, but it is obvious, by the terms of the judgment entered, that the trial court found that the $3,000,000 figure was the global amount of damages. Under these particular facts, we cannot say that the trial court was clearly erroneous, especially when the complaining party expressly declined to ask for a remand. Accordingly, we reject the Committee's contention on this point.

Affirmed.

HOLT, C.J., not participating.

GLAZE, J., concurs.